# RICHARD A. GREGORY AND WIFE, Appellants, *v.* LYDIA L. GOVER *et al.*, Appellees.

## APPEAL FROM PEORIA.

Where land was purchased for the benefit of several judgment creditors, under proceedings by attachment, it will be held by the purchaser, as trustee for each, in proportion to the respective amounts of the judgments. But if the creditors have, as between themselves, acted upon a different basis of division, and partition has been adjudged upon such basis, none but the creditor who has lost by consenting to accept less by the partition than his appropriate share, can complain of it.

In chancery in this State, the court may ascertain the equitable interests of the respective parties, and partition the premises accordingly. At law, the rule is different.

THE petitioners filed their petition in the Peoria Circuit Court, stating in substance : That at the May term of said court, 1838, one James P. Morris recovered judgment against William H. Savage and William J. Austen, for $4,397.47 and costs ; that on 12th June, 1838, execution issued to sheriff of Peoria county, on said judgment ; that on 18th day of May, 1838, Edward Tracy and Alfred Tracy recovered in same court, a judgment against said Savage and Austen, for $1,308 and costs ; that on 12th June, 1838, execution issued on last named judgment to sheriff of Peoria county ; that sheriff, by virtue of said two executions, on 11th day of August, 1838, sold twelve lots in Mills' Addition to Peoria, at which sale Morris and the two Tracys became the purchasers ; that on 18th June, 1841, sheriff of Peoria county deeded said lots to said Morris, and Edward and Alfred Tracy ; that before the sheriff's sale, it was agreed and understood by parol between Morris and the Tracys, that they should purchase jointly, but that Morris should hold an interest in said lots of two-thirds, and the Tracys one-third ; that in 1850, Morris died in St. Louis, Mo., leaving children

and heirs at law, all of whom are parties; that in September, 1849, Edward Tracy died, leaving several children, all of whom are parties.

Petition sets forth and exhibits title to said lots from the United States down to Savage and Austen, vesting in them a fee simple title, and prays for partition, that petitioners, as representatives of Morris' title, may have two-thirds and the Tracys one-third interest in said lots.

On 16th December, 1854, petitioners filed their amended and supplemental bills, stating in substance: That since filing original petition, petitioners had purchased the interest of Caroline C. Austen, one of the Morris heirs; that administration had been granted on the estate of Edward Tracy, deceased, in Peoria, to one Ezra G. Sanger; that said Sanger had sold to one John Comstock, under an order of the County Court of Peoria county, to pay debts of Edward Tracy, deceased, the interest of said Edward Tracy in said lots; that said Comstock .purchased at such sale with full knowledge that said Edward Tracy owned only one-sixth part of said lots; that Comstock had also purchased the interest of Alfred Tracy in the premises since filing original petition, and makes Comstock a party.

On 11th May, 1855, Comstock filed his separate answer, admitting the recovery of the Morris and Tracy judgments, issuing executions thereon, sale of the lots as the property of Savage and Austen, the execution of sheriff's deed to Morris, Edward and Alfred Tracy, jointly, as stated in petition; claims that the sheriff's deed vested in Morris and Tracys each one-third interest in said lots; admits the death of Morris and Alfred Tracy, leaving heirs as stated in petition; admits the title as stated in petition, excepting as to the interest claimed by petitioners; admits purchase by Comstock, of Edward Tracy's interest of administrator's sale; denies all agreement and undertakings between Morris and Tracys relative to the interest each should have in the lots; claims to be the owner of two-thirds of the lots, *and pleads the statute of frauds.*

At the May term, 1856, petitioners filed a further amended petition, stating that the judgments obtained against Savage and Austen, by Morris and Tracys, were judgments in attachment; that the writs of attachment were made returnable at same term; that Edward Tracy and Alfred Tracy were, before and at the time of recovering said judgments, and at time of sheriff's sale, partners in business; that the note on which judgment was obtained was given to them (the Tracys) as partners; that their interest was that of one person; that said judgments and executions were satisfied *in part* by sale of said lots; that Morris paid more than two-thirds, and Tracys less than one-third

of the purchase money, of which Comstock had notice; that before and at time of sales it was agreed by *parol*, between Morris and the two Tracys, that the sheriff's deed should be made to them jointly, in trust, however, that the title should be held by the three in proportion to their interests in said judgments; that Comstock purchased with notice of such equities.

On 1st Sept., 1856, Comstock filed his answer to amended bills, denying every thing excepting what had been before admitted, and insists on *the statute of frauds*.

Petitioners filed the usual replication.

*Caroline C. Austen* swears that she is daughter of James P. Morris. Her father died 17th Oct., 1842. Proves heirship, marriage, etc. Has heard her husband say that her father owned two-thirds of Peoria property. Always understood that Tracys had an interest of one-third in said lots.

*Charles F. Tracy* swears that he is a son of Edward Tracy, deceased; that Edward Tracy died in St. Louis, in Nov., 1852; that witness claimed one-sixth of the lots. He obtained his interest by quit claim deed from Alfred Tracy, and that he sold to Comstock his interest. He understood that the interest of the parties was determined by the amount of the attachment judgments; that lots were to be divided in proportion to said judgments; that Edward and Alfred Tracy were partners in business; that the understanding between the Morris heirs and heirs of Edward Tracy, since the decease of Morris and E. Tracy, had been that Morris' heirs owned two-thirds and Tracys one-third; That James P. Morris was to pay two-thirds and Tracys one-third of the taxes thereon. Alfred Tracy never paid any tax; that Alfred Tracy executed a paper 3rd Oct., 1853, to show the commissioners that might be appointed to divide the lots; that the Tracy interest was only one-third. This suit was not then pending.

*Edward A. Tracy* swears he is son of Edward Tracy, deceased; witness claimed one-third the lots under a parol bargain with his father, who promised to convey to witness the interest of both Edward, deceased, and Alfred Tracy. Had heard his father say he and Alfred owned one-third of the lots. Don't know of any particular agreement between the heirs of Morris and Tracy heirs, since the death of Morris and Tracy, as to the amount of interest of each; had always understood Morris owned two-thirds interest in the lots.

*Alfred Tracy* swears that Edward Tracy died 5th November, 1852, leaving children, Edward A., Henry W., Augusta E., Alfred R., William L. and Eliza R. Tracy. Witness was interested with Edward Tracy in lots; got their title by sheriff sale; witness sold his interest to Charles F. Tracy; was no

understanding between Morris, witness and Edward Tracy, as to share of each in lots.   Don't know how it was that the sheriff's deed was executed to them jointly.

*Charles McClelland* swears that he was present at administrator's sale by Sanger, and that Grove, as attorney of petitioners, gave Comstock notice that they claimed two-thirds of the lots.

*Henry Grove* swears that he gave Comstock notice at said administrator's sale, of petitioners' claim of two-thirds.

*Thomas Bryant* says he was the sheriff who made the sale to Morris and Tracys.   That no money passed on the sale, nor when the certificate was given.

*George T. Metcalf* swears that he was present at sheriff's sale, was acting as the attorney of the Tracys and Morris. Supposes he bid off the property for the creditors.   Creditors were not present.   That the intention was that the property should be held by the purchasers, in proportion to the amount of their respective judgments.

*Comstock* showed deeds conveying to him all the interest of Edward and Alfred Tracy in the lots.

At the special term, September, 1856, court decreed partition, giving two-thirds to petitioners and one-third to Comstock. Appointed commissioners to make partition.

At November term, 1856, commissioners reported a division according to the decree, which report was affirmed, and final decree made by the court.   To all which Comstock objected and excepted.

N. H. PURPLE, for Appellants.

H. GROVE, for Appellees.

CATON, C. J.   We think this is a case where the equitable doctrine of a resulting trust should be applied.   Morris, in an attachment proceeding, recovered a judgment against Savage and Austen for $4,397.47, and at the same term, E. & A. Tracy recovered a judgment against the same parties for $1,308. The property in controversy was sold under both judgments, and Metcalf, acting as the attorney for the plaintiffs, bid off the property, in the joint names of all the plaintiffs, in both judgments.   Under our attachment law, the parties to these judgments were entitled to a *pro rata* distribution of the proceeds of the sale.   The property was bid off by the attorney for the plaintiffs jointly, not as a speculation, nor for an investment, but for the purpose of satisfying the judgments *pro rata*, so far as the amount of the bids would do so.   No money was paid on the purchase.   Suppose the judgment debtor had redeemed

the land, as he had a right to do, how would the redemption money have been disposed of? It is expressly determined by the statute, that it would have been distributed to the judgment creditors equally, in proportion to the amounts of their respective judgments. This shows, very clearly, what were the relative interests of the parties in the land, after the purchase was made, and until the time for redemption expired. Now, can it be said, that the passing of the time for redemption, changed those relative interests? We think not. If Morris was entitled to receive one-half, two-thirds, or three-fourths of any redemption money which might have been paid in, he had, in contemplation of law, paid that relative proportion of the amount of the bid, for he was only entitled to receive, as redemption money, what he had in legal contemplation paid at the purchase. Now, so soon as that sale was made, these judgments were satisfied, to the amount for which the land sold. Suppose the judgment debtor had, at the next term of the court after the sale, applied to have an entry of satisfaction made upon the judgments, to the amount for which the land sold. Can there be any doubt that the court would have ordered satisfaction upon each judgment, in the proportion which the amount of each bore to the amount of the sale? Upon this point, we apprehend, there can be no controversy. If at that time the entries of satisfaction would have been thus made, then the same entry would be made now. These judgments were then, in law, thus relatively extinguished, and by that sale, at least, the one has become no more satisfied, and the other no less. This was the situation of their relative rights, at the time of the purchase, and if so then, so they have continued, and so they now are, unless they have been changed by subsequent agreements.

The proof shows that the parties always approximately so treated the property. Although the Morris judgment was more than twice as much as the Tracy judgment, yet it seems to have been always considered and treated by the parties as if he owned two-thirds of the land, and the Tracys one-third, and in that proportion did they always pay the taxes upon the land, at least up to the time of the death of Morris, and for a long time after; and in view of this understanding of the parties, the court below entered a decree, giving to the heirs of Morris two-thirds, and to the purchaser from Tracy one-third, but as the representatives of Morris alone could complain of this, the decree cannot be disturbed on the complaint of the other party. It carries out the intention and understanding of the original parties. Comstock, at the time of his purchase, seems to have been fully and distinctly informed of the extent of the interest of the heirs of Morris. Technically speaking, no doubt, the sheriff's

deed vested the legal title in the three grantees as tenants in common, but we cannot see that this presents the least difficulty to a court of equity, in so disposing of the legal title as to make it conform to the equitable interests of the parties. In this State, at least, on a bill in chancery for partition, the court may ascertain the equitable interest of the respective parties, and partition the premises accordingly. On a partition at law, the rule is different, for a court of law can only take cognizance of legal titles.

The decree must be affirmed.

*Decree affirmed.*