AARON W. WALDEN

v.

ASAHEL GRIDLEY.

36  523
90a  ³670

36  523
111a  ¹505

1. POSSESSION OF LAND —*notice afforded thereby.* Where a party is in the actual, open and visible possession of land, under an unrecorded deed, his possession will afford notice to the world of his rights equally with that which would have resulted from the recording of his deed.

2. And a purchaser thus situated will be protected against any lien of a judgment recovered against his grantor after he obtained the possession.

3. ADMINISTRATOR'S SALE —*what title passes.* A purchaser of land at an administrator's sale, acquires only such title as was then vested in the heirs of the intestate.

4. So, if the land was subject to the lien of a prior judgment against the grantor of the intestate, the purchaser will take the title with that infirmity.

5. SAME — *caveat emptor.* The doctrine of *caveat emptor* applies to such sales, and the purchaser will be presumed to have examined the records in relation to the title, and if he neglects to do so, he must abide the consequences of his omission.

6. VENDOR AND PURCHASER —*rights and duties in respect to subsequent liens.* Where a judgment is recovered against a grantor of land subsequent to his making the conveyance, and a lien attaches as against the prior grantee by reason of his having failed to give notice of his rights, it is the duty of the grantor to redeem the land from any sale which may be had under such judgment.

7. But *quære*, whether the grantee in such case would have his remedy over against his grantor, should he neglect to redeem the land, for the amount it thus contributed to pay the grantor's debts.

8. MORTGAGE —*of the rights of one who holds a title as security for money advanced in obtaining it.* Where a party confessed a judgment in favor of another, to enable the latter, as a judgment creditor, to redeem land sold under a prior judgment against the former, and for his benefit, and failing to furnish the money for the purpose, the party who was to redeem advanced his own money, and thereby procured the title, it was held, he would hold the title as security for the money thus advanced, and could not be deprived of it until his money was refunded to him.

9. If the party thus agreeing to make redemption, omitted to do so, but obtained an assignment to himself of the certificate of purchase of the land which had been sold, upon which he procured a sheriff's deed, he would hold the same relation to the title he would if he had obtained it in the manner agreed upon, by means of redemption.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was a suit in chancery, instituted in the court below by Aaron W. Walden, against Asahel Gridley.

It is alleged in the bill, that on the 24th of April, 1857, R. E. Williams, as administrator of the estate of L. L. Strain, by order of court, sold to pay debts certain land, describing it, and that at said sale complainant became the purchaser, and received from the administrator a deed, and went into possession, and is still in possession; that he paid a good price, and secured the payment as per order of sale; that Strain had in his lifetime purchased said land of James Vandeventer; that on the 18th of November, 1857, the defendant obtained from Joseph H. Moore, sheriff of McLean county, a sheriff's deed to said land; that at the September term, 1858, of the Circuit Court of McLean county, defendant commenced against complainant an action of ejectment, under said sheriff's deed, to recover possession of said land, which action is still pending. Shows foundation of defendant's deed as follows: That at the April term, 1856, one James C. Walker recovered a judgment against said Vandeventer for $1,990.80; that said judgment became a lien on the real estate of said Vandeventer; that at the time said judgment became a lien, said Vandeventer was apparently, from the records, the owner of said land; that execution, issued on said Walker judgment, was levied upon said land and other lands of Vandeventer, all of which were sold by the sheriff, and purchased by Walker; that Strain had a deed from Vandeventer to said lands before said judgment, but it was not recorded until afterwards; that after said sale and purchase by Walker, Gridley and Vandeventer got together and made an arrangement whereby Gridley was, for Vandeventer, to pay off and redeem all of said lands from the Walker sale; and that as a security to Gridley for so doing, Vandeventer confessed a judgment, in favor of Gridley, for a large amount, etc.; that Gridley told publicly and frequently that he was going to redeem said lands from said Walker sale for Vande-

venter; that he so told said administrator of Strain, and others; and that in fact said Gridley did pay to said Walker the full amount of said sale, interest, etc.; but Gridley, instead of taking from Walker, as he should have done, a certificate of redemption, obtained from said Walker an assignment of the certificate of purchase, and after the time to redeem had expired, obtained said deed, commenced said action of ejectment, etc.; charges that said payment to Walker was in fact a redemption, and that Gridley, in taking said assignment, deed, etc., acted in bad faith to Vandeventer, and others who were interested in said lands, and that Gridley holds the title by said sheriff's deed in trust for complainant and others interested in the lands sold by Walker. The complainant prays for an injunction, enjoining and restraining the defendant from the further prosecution of his action of ejectment, and that the sheriff's deed to the defendant be cancelled.

An injunction was granted in accordance with the prayer in the bill.

The defendant answered, admitting that Williams is administrator, etc.; that he sold the land as stated, for a fair, round price, and that Strain in his lifetime derived title to said land from Vandeventer; admits that he got a sheriff's deed, etc.; admits the commencement and pendency of the action of ejectment, etc.; admits the recovery of the Walker judgment, the sale under it to Walker; admits that Vandeventer had conveyed land in bill to Strain before said judgment, but that Strain had neglected to have his deed recorded until after the judgment. Denies that he and Vandeventer made an arrangement that Gridley was to pay off the Walker judgment, and denies that Vandeventer confessed a judgment or gave other securities to Gridley for that purpose, but says that Vandeventer has been and, up to the present time, is largely indebted to Gridley. Admits that at the June term, 1857, of McLean Circuit Court, Vandeventer did confess a judgment in favor of Gridley for $5,000; that said judgment was confessed at the instance of Vandeventer and for his convenience, and without consideration, and was intended to be used solely for the pur-

pose of enabling Gridley to redeem said lands from said Walker sale, he, Vandeventer, agreeing to furnish Gridley the money to redeem said land as a judgment creditor ; that at the time said judgment was confessed, Vandeventer was, and still is, indebted to Gridley, and that said judgment was not intended as a security for money to be advanced to redeem said land, or for any other purpose, except, as above stated, to enable Gridley to redeem, as a judgment creditor, with money furnished by Vandeventer; that Vandeventer failed and neglected to furnish money for said purpose or to pay his debt to Gridley ; that Gridley relied on Vandeventer furnishing money to redeem from the Walker sale, as it was solely for his interest to do so; and admits that he probably did say to Williams, administrator of Strain, and others, that he intended to redeem from said sale for Vandeventer, but denies that he had any design to induce any one to sleep upon his rights, etc. ; says that inasmuch as Vandeventer did not furnish the money, the land was not redeemed ; says that after the expiration of twelve months from Walker's sale, he purchased of Walker, with his own money and for his own use, said certificate of purchase, and took an assignment of the same, and got a sheriff's deed, etc. Denies that payment to Walker was intended as a redemption ; denies that he acted in bad faith to any one, etc. ; says said Williams, as administrator, had no funds of the estate with which to redeem, etc. ; denies any equity of complaint, etc.

The answer was sworn to. A replication was filed, and the cause came on for hearing at the December term, 1863.

*R. E. Williams*, on behalf of the complainant, testified :. I was administrator of Strain's estate; saw Gridley between the expiration of the twelve and fifteen months after the Walker sale ; there was considerable difference then between gold and currency; met Gridley in the street; Gridley said he was then ready to redeem from the Walker sale the Vandeventer lands, if Walker would take currency. I told him that Walker was from home at the time ; would be back in a few days, and I would tell him, and I presumed he would do so. We then parted. When Walker came home, I told him what had

passed between me and Gridley.   I had no money of the estate
to redeem, and made no effort to get any, for the reason that I
understood it would be redeemed by Gridley; outside of this
land, all the assets were not more than enough to pay the
widow's allowance, but I would have raised money myself to
redeem, had I not supposed Gridley had redeemed.   The land
was valuable, and I sold it for $2,400.

*James C. Walker* testified: I obtained the judgment against
Vandeventer, sold the lands, and purchased them at the sheriff's
sale; took two certificates of purchase and transferred them to
Gridley.   It was after the expiration of twelve months from
the sale that I transferred them to Gridley, and before the
expiration of the fifteen months.   I made the transfers at
the instance and request of Gridley; Gridley said he wanted
the transfer of the certificate, or wanted to redeem the land for
the benefit of Vandeventer, for whom, as I understood from
him, he was acting as attorney or agent; he spoke to me
several times about the matter before the transfer of the cer-
tificate, and said in these conversations that he intended to
redeem the land from my execution sale, and that he had a
judgment against Vandeventer to extend the time of redemption
three months longer, and meeting me on the street the day or
the day before the date of the transfer, told me he would then
redeem the land, if I would take currency instead of gold.   I
told him I would do so, and we went together to the clerk's
office to get the amount and have the matter fixed up.   Colonel
Gridley requested Mr. Burr to make the calculation of interest,
which was done, and then requested him to write the transfer
on the record and on the certificate for me to sign, while doing
which, Mr. Burr asked me what would become of the vendees
of Vandeventer for the lands covered by the certificates.
Colonel Gridley said what he was doing was for the benefit of
Vandeventer, and that the transfer was a mere matter of form.
This may not have been his precise language, but was the
substance if not his exact words.   My recollection is, that Mr.
Burr was present all the time, and Mr. McCullough a part of
the time.   I do not recollect any one else being present.

Cross-examination :

I do not recollect that Gridley said anything to me about redeeming before the expiration of the twelve months.

*Hudson Burr* testified :

Some time in the summer of 1857, I held a certificate of purchase on some land owned by A. T. Hedrick ; one day that summer I met Asahel Gridley and he asked me about the certificate and said, " I intend to redeem that and the Vandeventer land before the time runs out." He told me he had taken a judgment against Vandeventer for $5,000, to get fifteen months to redeem, if necessary. I afterward went to the McLean County Bank, and asked Gridley how soon he could pay me the money, as I was in want of it. He said he should have money in a few days and then he should take up my certificate and Walker's. A few days afterward, Gridley and Walker came to the circuit clerk's office, and Gridley asked me to compute the interest due on Walker's certificate which he held on Vandeventer's land. I did so, and gave him the amount. At his request I then wrote an assignment on each of the two certificates, and another assignment on the record of each, and handed them to Walker to sign. Walker hesitated, and said he understood the land was to be redeemed, and if he (Gridley) intended to take a deed, he (Walker) might as well keep the certificates and take a deed as anybody. Gridley said he was doing this entirely for Vandeventer's benefit, and he did not want the land. Walker then signed the assignments. Afterwards, when the land was sold by Strain's administrator, I attended the sale and bid on the land, but it went higher than I wanted to pay.

*James Vandeventer*, on behalf of the defendant, testified as follows :

In July, 1856, J. C. Walker held a judgment against me in the Circuit Court of McLean county, Illinois; had an execution levied on certain lands, among them the Strain land. I saw Gridley in May, 1857; I asked Gridley how I could make an assignment to get an extension of time to redeem the lands Walker had sold; he told me I could get time by

making a judgment creditor, and suggested that I execute a note to him, which I did, for $5,000, and took an instrument which reads as follows :

" James Vandeventer's note to me for five thousand dollars, dated May 9th, 1857, will be fully satisfied by his paying to me twenty-one hundred dollars to redeem his McLean county lands, which have been sold at sheriff's sale in said county.

" Witness my hand and seal this 11th of May, 1857.

A. GRIDLEY."

There was no definite arrangement entered into between Gridley and myself in regard to his redeeming the land, any further than what is set forth in this agreement, but I expected Mr. Gridley to redeem the land as a judgment creditor for my benefit, and at the time Gridley and I made this arrangement, I expected to furnish him the money to redeem the land, and if I did not furnish him the money in time to redeem, I expected him to furnish the money himself, and that I would pay it back to him with interest. If he did anything about it, this is what I expected him to do. I did not know anything about Gridley purchasing the sheriff's certificate from Mr. Walker until some time after he had purchased it, and for some time after the time of redemption had passed. I expected whatever Mr. Gridley did in the matter, he would do as a matter of accommodation to me. At the time I gave the judgment to Gridley, I was indebted to Gridley & Co., the amount I do not recollect, and they had notes of mine in their possession as collateral security for what I owed them, but this indebtedness had no connection with the judgment that Gridley holds against me. I did not furnish Gridley with any money to redeem the land in controversy particularly, that is, I did not furnish him money before the time of redemption expired to redeem the land in controversy, or any other land, but since the time of redemption expired, I and others have paid Gridley some considerable amount of money, which was paid him on the Walker judgment, but no part of the money, as I know of, has been paid for the purpose of redeeming the land in controversy, but has

been paid for the purpose of redeeming other lands, and when paid I understand quit claim deeds were executed by Mr. Gridley to the parties who paid.

The sole object in the judgment to Gridley was to give Gridley the right as a judgment creditor to redeem, so that he would have three months longer to redeem for the benefit of all the parties.

Cross-examination :

Gridley was to redeem the lands as a judgment creditor, but was to redeem before the time would expire that was fixed by law.

The terms were, that I was to furnish the money to redeem with, but if I failed to get the money ready before the time of redemption expired, and Gridley furnished it himself, that I would pay him back the amount advanced by him, with interest, and I expected Gridley to hold the lands that I owned then in McLean county until he received his money.

The only writing between us I have given above.

The arrangement was made between us in the city of Bloomington, McLean county, Illinois, in May, 1857. I do not think there was any person present; if there was, it was J. H. Wickizer. At the time of said arrangement, I resided in Chariton, Lucas county, Iowa. I removed from McLean county, Illinois, on the 8th of April, 1856.

I did confess a judgment in favor of Gridley for $5,000; the only consideration was to make Gridley a judgment creditor, to give him three months longer to redeem my land sold on execution.

Gridley was to redeem the land as a judgment creditor, if he did anything in the matter, and receive the benefit accruing to a judgment creditor. I did not expect Gridley to purchase the certificate of Walker.

I made the arrangement with Gridley for my benefit, and for the benefit of those who bought land of me.

I was to pay him money, and was to pay before the time of redemption expired, if I could, and if I did not, and he

advanced the money to redeem the land, I was to pay him as soon as I could.    I did pay him as before stated.

The certificates of purchase from the sheriff to Walker, with the assignments to Gridley, were also given in evidence.

The court below entered a decree dismissing the bill, from which the complainant took this appeal, and now insists he was entitled to the relief sought by the bill.

Mr. R. E. WILLIAMS, for the Appellant.

Mr. B. C. COOK, and Messrs. MOORE & GREENE, for the Appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

On the hearing in the court below, complainant's bill was dismissed, which is now assigned for error.    It appears, that Gridley advanced his own money to redeem the land from Walker's purchase, and it does not appear that it has ever been refunded, nor does complainant offer to repay him.    It is, however, contended that a judgment was confessed by Vandeventer in favor of appellee as a security for the advance of the sum necessary to redeem the lands.    In his answer, appellee denies that such was the arrangement, but, on the contrary, insists that the object in confessing the judgment was to enable appellee to make the redemption as a judgment creditor.    And Vandeventer, who had previously owned the land and who had sold it to Strain before his administrator sold to complainant, corroborates appellee's sworn statement in his answer.

It appears that Vandeventer's deed to Strain was executed before Walker's judgment was recovered against Vandeventer, but Strain had failed to place it upon record.    Whether Strain had entered into the open, visible possession of the land before Walker obtained his judgment against Vandeventer does not appear.    Had this been the case, Walker and his assignees could have taken no title, as such possession would have been equal notice, with recording, to subsequent purchasers.

But as this does not appear, we may safely infer that the judgment became a lien before Strain went into possession.

Appellant, when he purchased at the administrator's sale, acquired such title only as was then vested in the heirs of Strain. If it was then subject to the lien of Walker's judgment, he acquired it with that infirmity, and to preserve his title he must free it from the incumbrance. The doctrine of *caveat emptor* applies to such sales. Appellant had full access to the records of the county, and he must be presumed to have examined them in reference to the title before he purchased. If he failed to do so, it was his own negligence, and he must abide the consequences of his omission to protect his interest. It may be that he has his remedy over against Vandeventer, for the amount the land has contributed to pay his debts, but that question is not now before us and we refrain from its discussion. That it was the duty of Vandeventer to redeem this land which he had previously sold, from the sale under Walker's judgment, there can be no question. And we think it is apparent that it was his design to do so when he made the arrangement with appellee.

If, however, this was so, as he failed to furnish the money for the purpose, appellee cannot be deprived of the title he acquired until his money has been refunded. We think it is clear that he took the assignment of the certificate of purchase, not for his own benefit, but for Vandeventer, and that he was to hold the lands as security for the repayment of the money. And although he was to redeem with the judgment, which was confessed for that purpose, the assignment resulted practically in the same end. Had he redeemed as a judgment creditor and no person had advanced upon his bid, it would have been struck off to him for the redemption, and he would have been at once entitled to a deed, or, if more had been bid, the purchaser would have received a certificate of purchase, entitling him to a deed at the expiration of sixty days if not redeemed in the meantime from that sale.

There is nothing in this record from which it can be inferred that appellee was to release this land until his money was

repaid.   He positively denies, in his sworn answer, that the judgment or any other security was taken to release the land, and this denial is not overcome by proof equivalent to the testimony of two witnesses.   Having received the assignment of the certificates of purchase as a security for the money advanced, the title acquired by the deeds from the sheriff, on those certificates, are a like security, and he cannot be required to part with his title until his money has been repaid.   This not being done, or even offered, the court decided correctly in dismissing the bill, and the decree must be affirmed.

*Decree affirmed.*