## VIRGINIA WHARTON *et al.*

*v.*

## WILLIAM BUNTING.

LIMITATION LAW OF 1835—*what constitutes actual residence.* Although a party may derive his title to different tracts of land from different sources, yet if the tracts adjoin each other and are all in one inclosure, and there is

no one but the owner residing thereon, such residence is an " actual resi-
dence" upon all the tracts, within the meaning of the act of 1835.

WRIT OF ERROR to the Circuit Court of Mercer county.

Messrs. PEPPER & WILSON, for the plaintiffs in error.

Mr. ISAAC N. BASSETT, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment, in the Mercer circuit court,
by the heirs at law of Albert P. Taylor, deceased, to recover
the possession of a tract of land described in the declaration as
the north part of the east half of the south-east quarter of
section 33, in township 15 north, in range 4 west, of which the
defendant was in possession, who interposed as his defense the
bar of the statute of January 17, 1835. The cause was tried
by the court without a jury, and resulted in a finding and judg-
ment for the defendant. To reverse this judgment the plain-
tiffs prosecute this writ of error.

The principal question pressed upon our attention is, the
proper meaning of the words "actual residence," as used in
sections eight and eleven of that act. Both parties deduce
their title from one Isaac Miller, who purchased from the Uni-
ted States, and both claiming through one Sheldon G. Wooden.
The twenty-five acres in controversy were situate north of
Camp creek.

It appears, when Wooden purchased he purchased at the
same time 69 acres, being the south-east part of the north-east
quarter of the same section. Both pieces adjoining, they were
enclosed under one fence, the house in which Wooden resi-
ded being on the 69-acre tract. On the 9th of November,
1852, Wooden conveyed, by deed, the 25 acres north of Camp
creek to Ebenezer Bunting, and sold to him at the same time
the tract of 69 acres, which he had purchased of one E. G.
Howe, but the title to which was in L. B. Howe, who, at the
request of E. G. Howe and of Wooden, made a deed therefor,
at the same time, to Ebenezer Bunting, he giving a mortgage

to E. G. Howe on the whole farm—the 69 acres and the 25 acres—to secure the purchase money due on the 69 acres. Bunting then went into possession, occupying the house built on the 69-acre tract, his son, the defendant in this suit, living with him. Proceedings were instituted against E. Bunting to foreclose the Howe mortgage, and at the sale the premises were sold to John R. Bassett, who conveyed to the defendant. These several deeds were duly recorded. Here, then, is a title deducible of record, from the United States, and the only question is, as the house in which Bunting resided was not on the 25 acres in controversy, but on another tract adjoining it, the two together making one close or farm, does the statute apply— that actual residence must be upon the very tract in dispute; that the actual residence was on a part of the north-east, whilst the tract in dispute is the north part of the east half of the south-east quarter, on which there never was a dwelling house or habitation for a residence.

Plaintiffs in error contend that residing on a tract of land to which a party has a good title, will not confer the quality of actual residence on another tract lying beside it, and especially when the title deducible of record offered to sustain the defense, comes from different sources. If this could be, then, plaintiffs in error contend, tracts of land which have a common corner, if enclosed, would come under the same rule, and there would be no stopping place. They insist that the statute must be strictly construed, and a constructive residence will not do; it must be actual and exclusive.

In answer to this argument of plaintiffs in error, the court is referred by defendant in error to *Williams* v. *Ballance*, 23 Ill. 193, and *Hassett* v. *Ridgley*, 49 id. 197, as maintaining a contrary doctrine.

*Ballance's case* was under the act of 1835, and he defended under a patent from the United States to him for a tract of land, out of which the premises in controversy were carved, and a residence on the tract for more than seven years, but not on the premises in controversy. This court put the question, did Ballance occupy the premises described in the patent since

1844, by actual residence thereon? And answer, "the fact simply is that he did, but he did not reside on every square yard of the premises, nor upon the particular lot. Nor was it necessary. He resided upon the legal sub-division described in his patent, the evidence of his title, and possessed and occupied it by himself and tenants." Further on, the court say the law only required him to possess and reside upon the premises claimed by his title papers, but the law does not say upon what portion he shall reside, and above all, it does not declare that he shall reside upon every portion of it.

*Ridgley's case* was under the limitation act of 1839, he defending under color of title, payment of taxes for seven years, and actual possession; in fact, he brought himself within both sections eight and nine of that act, and the question of actual residence did not arise. There, in discussing this topic, the court said it was impossible, in the nature of things, to lay down any precise rule as to what shall constitute actual possession of land. The owner can not be actually present on every part of a tract of land at the same instant of time; nor can his dwelling and curtilage occupy but an inconsiderable portion, and it frequently occurs that it is inconvenient, if not impracticable, to enclose it with a fence. Hence the rule has obtained, that a residence upon or the improvement of a part of a tract for use is held to be actual possession of the whole tract or body to which he holds title; and this, no doubt, extends to a number of smaller tracts or sub-divisions adjoining each other and forming one body. A residence or an improvement upon one legal sub-division would extend the possession to other adjoining legal sub-divisions forming one entire body of land, to which the possessor of the dwelling or improvement held conveyances.

The argument and illustration in these cases would seem to be applicable to the case before us. A person can not, in the nature of things, actually reside upon all portions of a tract of land. Nor can it be denied, if one occupies a tract of land composed of one or more legal sub-divisions as one entire farm divided into different fields, that he actually resides upon

each field. His actual residence is upon the farm, which farm is made up of several legal sub-divisions; therefore he actually resides upon each sub-division in contemplation of the law. To give to the statute a construction less liberal than this would go far to defeat the object of its framers, which was to quiet titles.

The occupancy of the farm, the two tracts being under one enclosure as one field, was open, notorious, exclusive and adverse to the owner or claimant of any one of the tracts, and as much notice to him as if a house for a residence was erected on each sub-division, and such house actually occupied. The statute intends nothing more by the term " actual residence," so far as the true owner may be concerned, than notice to him. Actual residence on the particular tract accomplishes nothing more.

The proof is ample as to the actual residence for more than seven years within this enclosure, and the bar is complete.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*