## Sophia Santee v. Abraham L. Day, et al.

### Gen. No. 10,678.

1. CONSPIRACY—*when person becomes party to.* Where a person, though ignorant of what is ultimately intended, is indifferent and careless as to everything except his personal compensation and safety and actually assists in carrying out a conspiracy, he thereby becomes a party to it.

2. NOTES—*proof that certain, are the ones secured by a trust deed sought to be foreclosed.* It is essential that a complainant seeking to foreclose a trust deed, establish by proof that the notes held by him are the ones described in and secured by such trust deed, and the mere fact that the notes which he holds correspond with the description contained in such trust deed, does not establish such fact where there is another series of notes held by another party which, likewise, accord with such description and are claimed to be the ones secured by such trust deed.

3. DELIVERY—*acceptance as essential to.* Acceptance by the grantee is essential to delivery and without it a deed does not take effect.

4. FEE SIMPLE TITLE—*what evidence of.* Possession of property is evidence of fee simple title.

5. NOTICE—*possession as, of claim of title.* Possession of real estate is notice to the world of title, or claim of title, legal or equitable.

6. NOTICE—*subdivision of property as affecting, by possession.* The mere fact that a farm in the possession of one having or claiming title thereto has been subdivided into lots and blocks, does not affect such possession as notice to the world of such title or claim in the entire farm.

Bill to foreclose. Error to the Superior Court of Cook County; the
Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the
March term, 1903. Affirmed. Opinion filed December 21, 1903.

WHEELOCK, SHATTUCK & NEWEY, for plaintiff in error.

CASTLE, WILLIAMS & SMITH, for defendants in error; BEN
M. SMITH, of counsel.

**Statement by the Court.** Plaintiff in error filed a bill
against Abraham L. Day, Charles E. Stade, trustee, Fried-
rich Kolze, Lina Kolze, Louisa Kolze and others, defend-
ants in error, to foreclose a trust deed executed by Abraham
L. Day to Charles E. Stade, of date November 17, 1897,
conveying certain premises therein described, to secure pay-
ment of three promissory notes of even date with said trust
deed, each for the sum of $1,200, with interest at the rate
of six per cent per annum, payable annually until maturity,
and seven per cent per annum after maturity, said notes
being made by said Day payable to his order, in one, two
and three years, respectively, and by him indorsed in blank.

Day and Stade were served by publication, and were de-
faulted. The other defendants answered and the complain-
ant replied. Pending the suit Friedrich Kolze died, and
his son, Frederick Kolze, administrator of his estate, was
substituted as defendant. The cause was referred to a
master to take proofs and report. The master found for
the complainant, and that there was due to her $4,612.68,
and recommended a decree foreclosing the trust deed as
prayed by the bill. The court sustained exceptions to the
master's report and dismissed the bill.

The property described in the trust deed is lots 1 to 48,
both inclusive, being all of block 8, in B. L. Lee's addition
to Fairview, etc., in Cook County. The following convey-
ances of the property described in the trust deed appear, by
the records in the office of the recorder of deeds of Cook
County, to have been executed, acknowledged and recorded
at the following dates : warranty deed, Friedrich Kolze and
Lina, his wife, to Abraham L. Day, date November 15,1897,
acknowledgment same date, recorded June 30, 1898; trust

deed, Abraham L. Day to Charles E. Stade, date November 17, 1897, acknowledgment November 23, 1897, recorded November 24, 1897; release deed, Charles E. Stade to Friedrich Kolze, date October 27, 1898, acknowledgment same date, recorded October 29, 1898. This document is a release and quit-claim of sixteen trust deeds described by their document numbers in the recorder's office, among which is the trust deed sought to be foreclosed, which is described by its document number 2,614,061; quit-claim deed, Abraham L. Day to Friedrich Kolze, date November 23, 1897, acknowledgment same date, recorded June 30, 1898; warranty deed, Friedrich Kolze and wife to Louisa Kolze, date October 28, 1898, acknowledgment same date, recorded October 29, 1898.

The evidence as to the warranty deed from Friedrich Kolze and wife to Abraham L. Day is substantially as follows: Friedrich Kolze is an illiterate farmer, and has resided on and cultivated a farm in Leyden township, Cook County, in this state, for about thirty-seven years. He can neither read nor write. Charles E. Stade is a nephew of Friedrich's wife, and resided in Chicago. Friedrich Kolze testified that November, 1897, on Sunday, Stade saw him at his farm, and asked him if he would like to sell his farm, and he said yes, if he could get his money for it, that he wanted $19,000, $1,000 in cash and the remainder in one, two and three years, to which Stade agreed; and subsequently, on the same day, brought to him the warranty deed to Day as grantee, above mentioned, which he and his wife signed, he by making his mark; that after the deed was signed, Stade told him to keep it until the following Monday, and then bring it to the Wisconsin depot, where he, Stade, would meet him; and that he, Kolze, in company with his son, Fred, met Stade at the Wisconsin depot the next Monday, and gave him the deed. Fred Kolze, son of Friedrich, who was twenty-one years of age at the time of the hearing, testified that he was present at the interview between Stade and his father, and that Stade said " he had a party to buy the farm," and he testified to

what then occurred substantially as did Friedrich. He also testified to going with his father to the Wisconsin Central depot, in Chicago, and the delivery of the deed to Stade there.

At the bottom or end of the deed are these words: " Witness to mark. Gottschalk." The deed purports to be acknowledged by " Friedrich Kolze and Lina Kolze, his wife," before " Alfred A. Ames, a notary public."

The evidence in respect to the apparent witness Gottschalk and the acknowledgment is, in substance as follows: Kolze, Sr., testified that neither Gottschalk nor Alfred Ames, the notary before whom the deed purports to have been acknowledged, was present when he, Kolze, signed the deed, that he did not know Gottschalk, and that when he gave the deed to Stade there was no notary's name or seal on it.

Lina Kolze, wife of Friedrich, testified that she knew neither Gottschalk nor Ames, and never saw any notary in regard to the deed. At the conclusion of her cross-examination the following occurred: Q. " After you signed that paper, when was the next time you saw it?" A. " I never saw it again until Pop brought it home and ask me if I wrote my name there, and I told him I did."

Fred Kolze testified that he was present when the deed was signed; that he, his father and mother and Stade were the only persons then present; that he did not know Louis Gottschalk; that the words " Witness to mark, Louis Gottschalk," were not on it the last time he saw it before it left his father's hands and that the notary's acknowledgment on the back of the deed was not then on it; also, that his mother was never at Ames' office, or in Chicago, on any of the occasions when he and his father came there. Both Friedrich and Fred Kolze testified that they did not know Abraham L. Day and never saw any one who called himself by that name.

It appears from the evidence that Friedrich Kolze, some time after the delivery of the deed to Stade, received from the latter, at several times, sums amounting in all to about $768, which he says was all he ever received. It also

appears from the testimony of Kolze and of his son Fred, that about a month after the deed was delivered to Stade, they, Kolze and son, saw Stade at Ames' office in Chicago, and Kolze, Sr., demanded the notes for the purchase money, and Stade said he thought he had better keep them in a box which he had, in a safety deposit vault, until the year notes became due; that they would be safe there; and that then Kolze and his son went with Stade to the box and Fred Kolze counted the notes and there were forty-eight of them. Stade never delivered any of the notes to Friedrich Kolze. It appears from the evidence that Stade and Ames procured Abraham L. Day to sign notes for the $18,000, which, by the agreement between Friedrich Kolze and Stade, was to be paid in one, two and three years, and that Day, instead of signing one series of notes for the $18,000, signed two series, each series being exactly like the other, so that he signed three other notes exactly like the notes of which complainant claims to be the owner, and to secure which she claims the trust deed was executed. Day, as to whom summons was returned not found, and who was unknown to the defendants, was accidentally discovered by the defendants' solicitors pending the hearing before the master, and was called as a witness by defendants. He testified that in November, 1897, he signed, in Ames' office, a whole lot of notes, over a hundred he thinks. Defendants' solicitors had, in a manner which will hereafter be shown, obtained possession of and put in evidence three notes, marked defendants' exhibits 1, 2 and 3, which are fac-similes of the three notes which complainant claims she owns and which she claims the trust deed sought to be foreclosed is security for. These notes and the trust deed sought to be forelosed were exhibited to Day, and he testified that the signatures to them were his. He also testified to his signatures to thirty-six other of the notes shown to him. The warranty deed purporting to be from Kolze and wife to him was also shown to him, and he testified that he never received that deed or any deed, that he never saw it till the hearing, and that he did not know of the existence of the war-

ranty deed, at the time he signed the papers in Ames' office. He also testified that he never had possession of any property in Corning, near the railroad station, where the property in question is, and that he never owned any property, nor authorized any one to purchase any property for him, and never put any papers in the recorder's office, nor authorized any one to do so, nor paid any money for having any paper recorded, and that he never saw Mr. Kolze, or any one connected with the matter except Ames and Stade. He testified that he went into Ames' office about five o'clock to sign the papers, and that it was 8:30 o'clock when he got through signing, and that, after signing the papers in Ames' office, he signed from eight to twelve notes for Stade in the Garden City Bank, and that, except those, all the other papers were signed at one time in Ames' office. He testified that he did not know the nature of the papers which he signed, but supposed they were to carry through some deal; that he had known Ames for about a year before he signed the papers, and had acquired a liking for him; that two or three weeks before he signed the papers Ames talked to him about signing, and repeatedly told him that the signing would not hurt him, and that if he would sign, he, Ames, would give him $150 or $200, in cash, and would fix him up and get him some fine clothes, so that he could go east and get a good position when he returned; and that, when he signed, Ames told him it was to sign some notes to get rid of the property, and that his, Day's, name was used just as a dummy.

The evidence as to complainant's ownership of the notes, on which she bases her right to foreclose, is, in substance, as follows: February 10, 1898, Charles E. Stade executed to T. L. Spellman his note for $1,000, with warrant of attorney to confess judgment thereon, at any time after the date thereof, and to secure payment thereof deposited with William W. Wheelock the three notes on which complainant bases her suit, with authority, in writing, to Spellman, to sell the same at any time before or after the maturity of the judgment note. Spellman, by written

instrument, of date July 5, 1898, sold, assigned, etc., the said collateral notes to the complainant for the sum of $1,440.67, and complainant acknowledged the receipt of the same from Wheelock, by receipt dated July 11, 1898.

It would appear from Spellman's testimony that in taking Stade's judgment note and the three notes as collateral security, he was acting for the complainant, because he says, "The money I loaned to Stade was Mrs. Santee's." In October, 1898, Mr. Cutting, representing the defendants Friedrich Kolze and Louisa Kolze, made demand on Charles E. Stade for the notes secured by certain trust deeds executed by Day, in response to which Mr. Pettit, state's attorney, delivered to him the notes of which the collateral notes transferred by Spellman to the complainant are fac-similes, and also seventeen other notes signed by Day, and purported to be secured by some sixteen or seventeen trust deeds, and also presented to Mr. Pettit a draft of the release deed above mentioned from Stade to Kolze, which, after being executed and acknowledged by Stade, was returned to Mr. Cutting, and was recorded, as heretofore stated. Mr. Cutting marked each of the notes so received by him cancelled. Mr. Cutting also demanded from Mr. Pettit the trust deeds, but was informed that they had been mislaid, or were locked up somewhere, and could not be got at just then, but would be produced later. The two series of notes signed by Day have like numbers. Thus the notes which complainant claims are secured by the trust deed, foreclosure of which is sought, are numbered 34, 35 and 36, and three of the notes returned to Mr. Cutting and marked defendants' exhibits 1, 2 and 3, are numbered 34, 35 and 36, and the notes having the same numbers are similar in all respects. Fred Kolze identified defendants' exhibits 1, 2 and 3 as being some of the notes which he saw in Stade's safety deposit box and counted about a month after the signing of the warranty deed. The evidence shows that block 8, described in the trust deed, is part of a sixty-acre farm on which Friedrich Kolze, at the time of the hearing, had lived for thirty-seven years, and all of

which he had farmed and cultivated during all of that time. He used block 8, which is part of the farm, for raising hay the year next before the hearing. Block 8 contains five acres, including the streets. About four years prior to the hearing the farm was subdivided into lots and blocks. Spellman, complainant's witness, testified that, before loaning the money to Stade to secure which the latter's judgment note was given, he saw the land described in the trust deed, and that it was being used as a farm.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The evidence shows very clearly that Charles E. Stade and Alfred A. Ames conspired to defraud Friedrich Kolze, or persons to whom some of the two series of notes mentioned in the preceding statement might be, by them negotiated. Abraham L. Day, although ignorant of what was intended, was indifferent and careless as to everything except the compensation promised him and his personal safety, and, by assisting to carry out the conspiracy, became a party to it. It would seem from the testimony of Day that the plan to defraud had been concocted by Stade and Ames before Stade procured the warranty deed from Friedrich Kolze. The warranty deed is dated November 15, 1897, and the notes and trust deed November 17, 1897, yet Day testified that two or three weeks prior to his signing the notes and trust deed, the signing of such papers as Ames wished him to sign was agreed on between him and Ames.

The good faith of the complainant in purchasing the notes is not questioned by defendants' counsel; but her equitable right to a foreclosure of the trust deed is contested. Complainant avers in her bill, and her counsel claim in argument, that the trust deed, foreclosure of which is prayed, was made to secure the notes owned by complainant and numbered, respectively, 34, 35 and 36. It was certainly incumbent on complainant to prove this essential averment. There having been two series of notes, each series being exactly like the other, and signed at the same time, the fact that complainant's notes agree with the description in

the trust deed, is certainly no evidence that complainant's notes are as found by the master, the notes which the trust deed was made to secure, because the notes, defendants' exhibits 1, 2 and 3, also correspond with the description in the trust deed. No evidence whatever, except the description in the trust deed, was produced by complainant to prove that the notes held by her, and not the corresponding notes in the other series, were the notes which the trust deed was executed to secure. She relies solely on her notes corresponding with the description in the trust deed. The court found that defendants' exhibits 1, 2 and 3 are the notes secured by the trust deed, which finding complainant's counsel contend is not supported by the evidence. The court having found, correctly, as we think, that the notes held by the complainant are not the notes which the trust deed was made to secure, and the complainant not having proved the contrary by a preponderance of the evidence, it is not necessary, although pertinent, to the decision of the case, to find affirmatively that defendants' exhibits 1, 2 and 3 are the notes so secured; but we think that the evidence tends to prove that they are. Stade, as the agent of Friedrich Kolze, was authorized to take notes for the deferred $18,000 of the purchase money, but certainly was not authorized to procure the execution by Day of duplicate notes, aggregating $36,000. About a month after the execution of the notes, or about December 17, 1897, Stade exhibited to Friedrich and Fred Kolze a series of forty-eight notes for the $18,000, as the notes secured by the trust deed, which he, Stade, kept in a box in a safety deposit vault. Fred Kolze counted the notes and, at the hearing, testified that defendants' exhibits 1, 2 and 3 were among the notes exhibited to him and which he counted. These notes, apparently by Friedrich Kolze's acquiescence, were retained by Stade, in his box, for safety. Complainant's notes were not deposited by Stade, as collateral security for his judgment note to Spellman, until February 10, 1898, and were not sold to complainant until July 5, 1898. It is a contested question between the parties whether there was a delivery of the warranty deed from Kolze, Sr., and wife

to Day. It appears from the statement of the evidence preceding this opinion, that Day never received the deed; that he did not know of its existence when he signed the notes, etc., and had not seen it till it was exhibited at the hearing; that he never owned any property in his life, nor authorized any one to purchase property for him, and that he never authorized the recording of the deed.

Acceptance by the grantee is essential to delivery; without it there can be no valid delivery. Herbert v. Herbert, Beecher's Breese, 354; Kingsbury v. Burnside, 58 Ill. 310; Dale v. Lincoln, 62 Ill. 22; Union Mut. Ins. Co. v. Campbell, 95 Ill. 267; Thompson v. Dearborn, 87 Ill. 87; Weber v. Christen, 125 Ill. 91.

In Herbert v. Herbert, *supra*, the court say:

" It is also held to be essential to the legal operation of the deed that the grantee assents to receive, and that there can be no delivery without an acceptance. Indeed, a delivery of a deed, which is essential to its existence and operation, necessarily imports that there should be a recipient. Now, in this case, it would be idle to contend that there was a delivery and reception, when the grantor died before the grantee knew of the existence of the deed: He could not then receive that of the existence of which he had no knowledge, nor could there have been a delivery to him without such an acceptance. There had been no act on the part of the grantor before his death tantamount to a delivery, much less an actual one. The act of recording does not amount to it, because there appears a total absence of knowledge on the part of the grantee of such recording, or even of the existence of the deed until after the death of the grantor, and it does not appear that he had ever received the deed. The case of Jackson v. Phipps, 12 Johns. Rep. 419, before referred to, and Maynard v. Maynard and others, 10th Mass. Rep. 457, are directly in point, and sustain the principles here laid down. Without then inquiring whether the deed was fraudulent, it is sufficient to ascertain that the deed was never well executed by delivery, and that no estate passed thereby."

The law as thus announced has been adhered to in the subsequent cases cited. It is common sense. A deed is a contract, and, to constitute a contract, the minds of the contracting parties must meet. There having been no

acceptance by Day, there was no delivery, and, as said by the court in Herbert v. Herbert, "no estate passed thereby," and, consequently, the execution by Day, as a "dummy," of the trust deed to Stade conveyed no title. The deed executed by Friedrich Kolze to Louisa Kolze is undoubtedly good as against the former, but we do not deem it of any importance in considering the questions presented, because if complainant is entitled to a decree of foreclosure as against Friedrich Kolze, she is entitled to such decree as against Louisa Kolze.

Friedrich Kolze testified December 19, 1899, before the master, that he had lived in the same house on his sixty-acre farm, which includes the premises described in the trust deed, and had cultivated and used the entire sixty acres as a farm for thirty-seven years, claiming to be the owner thereof. Spellman, complainant's witness, and, as it would seem from the evidence, her agent, testified that he visited the property described in the trust deed before taking Stade's judgment note, and the collateral notes, and that the property was being used as a farm. Friedrich Kolze's possession of the property is evidence of fee simple title in him. Keith v. Keith, 104 Ill. 397, 402. His possession was notice of his title or claim, whether legal or equitable, of which Spellman and the complainant were bound to take notice. Rupert v. Stark, 15 Ill. 540; Walden v. Gridley, 36 Ill. 523; Reeves v. Stevens & Co., 38 Ill. 418; Phillips v. Pitts & Co., 78 Ill. 72; Coari v. Olsen, 95 Ill. 273; Small v. Staff, 95 Ill. 39; Walsh v. Wright, 101 Ill. 178; Conover v. Goodman, 104 Ill. 365.

In the last case, as also in the preceding cases, the court say that possession is notice to all the world of the possessor's claim. Had complainant, or her agent, Spellman, inquired of Friedrich Kolze, complainant's notes would never have been put up as collateral security, or sold to complainant. The fact that the farm was subdivided into blocks and lots did not affect Kolze's possession or the effect of it as notice. Hassett v. Ridgely, 49 Ill. 197; Wharton v. Bunting, 73 Ill. 16.

The decree will be affirmed.    *Affirmed.*