# STEPHEN HASSETT

*v.*

# NICHOLAS H. RIDGELY.

1. PARTITION—*in proceedings for—all persons having an interest must be made parties.* In proceedings for partition, the statute requires, that every person having an interest in the subject matter, shall be made a party, and where persons holding such interests are not made parties to the proceedings, and afforded an opportunity of being heard in defense of their rights, they cannot be deprived of their property, or otherwise bound by such proceedings.

2. COLOR OF TITLE—*judgment in partition.* The judgment of a proper court making partition, purports on its face to convey title, and when valid, vests the title absolutely in the parties as though deeds were executed ; and although in the suit in which such judgment was rendered, a part of the tenants in common were not made parties, nevertheless, such judgment constitutes color of title, and where a bar under the statute of limitations has been acquired, a recovery may be had under it to regain possession that has been invaded, and a claim under the outstanding title previously owned by the persons who were not made parties in the partition suit, cannot be set up to defeat it.

3. STATUTES—*construction of 1st and 2d sections of limitation act of 1839— color of title.* A person relying upon color of title, need not exhibit a perfect chain of title, or go back of the instrument which constitutes his color of title, nor can it be defeated by showing a defect in the title, antecedent to the instrument relied upon as color, or by showing that his color of title was not connected with any source of title.

4. LIMITATION OF ACTIONS—*extent of possession—what constitutes.* Where a party having color of title of land, subdivides it into blocks and lots, streets or other subdivisions, actual possession of the lots by himself, or by his tenants, is a sufficient possession, within the statute, of the whole tract.

5. It is not necessary that he should reside upon every part and parcel of the tract, as the streets and lines of lots in no wise destroy the unit, or identity of the property, or limit the possession.

6. SAME—*what will destroy entirety of possession.* But if he sells a portion of the tract, so as to separate a part from that of which he had actual possession, the unity of the property and the possession is destroyed, and possession does not extend to the isolated portion.

7. INSTRUCTIONS—*in ejectment.* Where in an action of ejectment, it appeared, that the plaintiff, claiming under a judgment in partition, had paid the taxes on

the property for a period of seven years from the time partition was made, and during that time the land was vacant and unoccupied, and he subsequently entered into the possession of the same ; *Held,* that no error was committed in refusing an instruction to the effect, that if the jury believed, from the evidence, that there were squatters on the premises, at a time *after* the bar of the statute had occurred, the plaintiff could not recover. This instruction applied only to an occupancy after the bar had become complete, and had it been given, would have excluded all the evidence with reference to the payment of the taxes during the running of the statute.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Mr. JOHN BORDEN and Messrs. GOOKINS & ROBERTS, for the appellant.

Mr. D. B. MAGRUDER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, brought by appellee, in the circuit court of Cook county, against appellant, for the recovery of certain blocks and lots in Ridgely's addition to the city of Chicago.

It appears that David Elston purchased the quarter section in which this property is situated, from the general government, and received a patent for the same. The patent calls for 160 acres. Elston first conveyed an undivided 60 acres of the quarter to one Hubbard. Afterwards, on the 21st of July, 1836, he also conveyed, by deed, an undivided part of three-sixteenths, or 30 acres, of the quarter to William L. May, which was recorded the 19th of August, 1836. May then began to sell portions of his 30 acres, describing them as undivided portions of the quarter. To John A. Underwood,

October 18, 1836, he thus sold an undivided 5 acres; to George Tucker, on December 3, 1836, 2 undivided acres; Stetson Lobdell, on December 3, 1836, 2 undivided acres; Daniel Vail, 2 undivided acres; to appellee, 14 undivided acres of the quarter, on the 4th of October, 1838, and the deed was recorded on the 8th of the same month.

In August, 1839, Elston and Hubbard commenced a proceeding in partition, in the circuit court of Cook county, to have their interests assigned to them severally. May, or his grantees were not named as parties, but the proceeding was against the other unknown owners. The order for a partition was rendered on the 20th of July, 1842, and it found that Elston owned 70 acres, Hubbard 60, and the unknown owners 30 acres. The commissioners made a division, and assigned to the unknown owners 30 acres in the north-east corner of the quarter, and their report was confirmed by the court.

Subsequently, appellee commenced a proceeding in partition in the Cook County Court, to have his interest set off and assigned to him in severalty. He made Underwood, Tucker, Cook, who had purchased of Lobdell, Vail and May, parties. May was served with process, and publication was made as to the other defendants, and Underwood, Tucker and Cook entered their appearance. While the proceeding was pending, May sold his interest in the premises, being 5 acres, to Justin Butterfield, which appears from a recital in the record of the proceedings, and by amendment of the petition. Butterfield was made a party. The deed from May to Butterfield was executed on the 12th of June, 1846, and recorded on the 30th of the same month.

In May, 1847, final judgment was pronounced in this proceeding, on the report of the commissioners, vesting the title to 15 acres in the north-west corner of the 30-acre tract, in appellee; 5 acres in the south-east corner in Butterfield; 3 acres, west of Butterfield's, in Cook; $1\frac{1}{4}$ acres west of Cook's in Vail; $3\frac{94}{100}$ acres, west of Vail's, in Underwood, and $1\frac{85}{100}$ acres,

west of Underwood's, in Tucker. These seem to have been the only parties in interest, so far as the records disclosed when this partition was made.

It, however, appears, that prior to that time, and on the 31st of January, 1837, May sold to Greenville Sharp Pattison, an undivided 1-40th, or 4 acres, of this quarter, but this deed was not recorded, nor was it ever acknowledged. Pattison conveyed this interest to James Dundas and John R. Vodges, on the 12th of January, 1838, the deed for which was recorded on the 24th of May, 1838, and it refers to the deed made by May to Pattison. Vodges and others conveyed to Jones, under whom appellant was in possession when the suit was commenced.

It appears, that after the partition in the proceeding by appellee was had, he proceeded to plat the portion allotted to him into blocks, lots and streets, as an addition to the city of Chicago. And Butterfield and the other defendants sold all or a portion of the tracts allotted to them.

It is not contended, nor can it be, that the partition made in the proceeding instituted by Elston, was not regular and binding. The court had jurisdiction of the subject matter, and of the parties in interest, the unknown owners having been brought into court by publication in the mode prescribed by the statute. Each of the petitioners had allotted to him his share in severalty, and the unknown owners their shares in common, in the 30 acres in the north-east corner of the quarter. That partition remains in full force, and must be taken to be binding upon the parties, as well as their privies.

The question, however, is presented, whether the partition had on the application of appellee, was such as separated the interest held by him in common with the other owners, or whether it remains unaffected by that proceeding. It appears that Dundas and Vodges then owned four undivided acres in that tract. It is true, the deed from May to Pattison was not recorded, but Pattison's deed to them had been, and it

referred in express terms to the deed from May to Pattison, by its date and as having conveyed that interest. Every person examining the records and reading that deed, would have been informed of the fact that Dundas and Vodges claimed title to an interest amounting to four undivided acres, through May. Appellee, therefore, had the means of learning that they claimed to be owners of an undivided interest in the 30 acres, and he should have made them parties. The statute requires all persons having an interest in the property to be made parties to a proceeding for a partition. They were owners of that interest, and had a right to be heard in defense of their own rights, before they could be deprived of their property, or otherwise bound by any judgment which might be rendered. It is a fundamental principle of the law, that all persons must be parties to a legal proceeding and afforded an opportunity to be heard before they can be bound by such proceeding. In this case, no such opportunity was afforded them, and they are not bound by the judgment of partition or other proceedings, nor did the action of the court in that case affect their titles, or convert their undivided interest into a separate parcel. That proceeding, therefore, did not bar their right to claim and assert their title to their shares.

It is, however, claimed that although the partition may not have been binding on persons not made parties, and failed to give appellee his interest in severalty, it does constitute claim and color of title, made in good faith ; and that possession and payment of taxes for the requisite statutory period, would present a a sufficient bar to an action of ejectment, and that if such a bar has been acquired, a recovery may be had under it, to regain possession that has been invaded ; and that a claim under the outstanding title, previously owned by Dundas and Vodges, cannot be set up to defeat it. In partitions at law, where the court has jurisdiction, the judgment vests the legal title to the portion assigned to the owners. In such cases, an exchange of deeds by the several owners is not necessary for the purpose.

26—49TH ILL.

*Street* v. *McConnell*, 16 Ill. 125; *Chickering* v. *Failes*, 29 Ill. 294; *Gregory* v. *Grover*, 19 Ill. 608. And the proceeding for partition under our statute is similar in its effects to the ancient writ of partition. The statute has but extended and regulated the remedy. It then follows, as a consequence, that a judgment under our act, vests the title in the owners as it did at common law. *Louvalle* v. *Menard*, 1 Gilm. 39; *Howey* v. *Goings*, 13 Ill. 85; *Greenup* v. *Sewell*, 18 Ill. 50.

This court has repeatedly held, that the deed or instrument relied upon as color of title, must purport on its face to transfer or convey title. *Bride* v. *Watts*, 23 Ill. 507; *Dickenson* v. *Breeden*, 30 Ill. 279; *McCagg* v. *Heacock*, 34 Ill. 476; *Shackleford* v. *Bailey*, 35 Ill. 387. It has likewise been held, that a judgment in partition at law, vests title in the several owners in the shares assigned to each as effectually as would deeds interchangeably made by the parties. *Street* v. *McConnell* and *Louvalle* v. *Menard, supra.* If, then, the judgment of the court approving the division and partition made by the commissioners, and confirming the title in the owners of their several parcels thus assigned to each, vests the title in them, then such a judgment purports to transfer or convey title. It purports to do this as effectually and precisely as would deeds interchangeably made by the tenants in common. It must, therefore, follow, that such a judgment is within the reason and policy of the law, and must be held to be color of title. In an ejectment suit, to trace title, it would be as necessary to introduce such a judgment as any other link in the title of which it forms a part.

In *Chickering* v. *Failes, supra*, it was held that an ineffectual attempt at a strict foreclosure of a mortgage, might be relied upon as color of title; that the mortgage having transferred the legal title to the mortgagee, when he obtained a decree of strict foreclosure, it purported to vest the whole title, equitable and legal, in the mortgagee. That it apparently terminated the fiduciary relation which existed between the

mortgagor and mortgagee, and when relied upon and held by the latter as his own property, it might be regarded as color of title, and interposed as such against a grantee of the mortgagor. In that case, the assignee of the equity of redemption was not made a party to the suit to foreclose the mortgage. And in that particular, that and this case are similar in prinple, where the act of the law, if regular, would pass title, if from any cause defective, should be held color of title as effectually as a deed which purports, but fails, to pass title. We have, therefore, no hesitation in holding that the judgment of a proper court making partition, although a part of the tenants in common may not have been made parties, is, nevertheless, color of title, and where the other requirements of the statute have been performed, may be effectually interposed as a bar.

This view of that question necessarily disposes of the question of defective description of the land in May's deed to appellee, as well as other objections interposed to the title anterior to the judgment of partition. This court has repeatedly held, that the person relying upon color of title, need not exhibit a perfect chain of title, or even go back of the deed or instrument which constituted color of title, nor will his color of title be defeated by showing some defect in the title, antecedent to the instrument relied upon as color, or even by showing that his color is not connected with any source of title. And this is the true construction to both the first and second sections of the act of 1839.

We then come to the question of whether appellee has shown a compliance with the other requirements of the statute. It seems from the evidence, that he paid all taxes on the 15 acres assigned to him, from the time the partition was made in 1847, until in the spring of 1865. The first payment made after the partition occurred was in November, 1847, and the last in 1864, making a period of about 16 years. It is true, that all of the receipts were not produced on the trial, but there was oral testimony, from which a jury would have been warranted

in finding such payments. And under these payments, appellee claims that he has brought himself within the provisions of both the first and second sections of the act of 1839. That during the first seven years in which he paid taxes, he had color of title made in good faith; that he paid all taxes legally assessed upon the land, and that it was vacant and unoccupied during that time. That during the last seven years he was in possession, under color of title and the payment of taxes. These were questions of fact for the jury to determine, but appellant complains that they were misled by the instructions given by the court, and that proper instructions asked by him were refused.

It is impossible, from the nature of things, to lay down any precise and definite rule as to what shall constitute actual possession of land. The owner cannot be actually present on every part of a tract of land at the same instant of time. He can be personally present upon but a small space of ground at the same instant; nor can his dwellings and the curtilage occupy but an inconsiderable portion, and it frequently occurs that it is inconvenient, if not impracticable to enclose it with a fence. Hence the rule has obtained, that a residence upon, or the improvement of, a part of a tract for use, is held to be actual possession of the whole tract or body to which he holds title. And this, no doubt, extends to a number of smaller tracts or subdivisions adjoining each other, and forming but one body. A residence or an improvement upon one legal subdivision would extend the possession to other adjoining legal subdivisions, forming an entire body of land to which the possessor of the dwelling or improvement held conveyances. Nor would the case be altered, if the land was intersected in different directions with public highways, over which the community had the right to travel. We presume no one would contend, that because a public road run through a quarter section or other legal subdivision, upon which a person had a farm, and which separated his fields, or the improved from the unimproved portion of his

land, he would not be in the actual possession of the portion separated from the improvements by the highway.

Nor do we perceive that it can make any difference where a person subdivides a tract of land into blocks, lots and streets, or other subdivisions, so long as he owns or has color of title to all of the property. The mere fact that he has established imaginary lines to designate divisions of the property, and to indicate over which part the public may pass, cannot matter, any more than the division of a farm by lanes or other public highways. If, however, he were to sell a portion, so as to separate a part from that of which was in actual possession, then the unity of the tract and the possession would be destroyed, and the possession could not be extended to the isolated portion. The tracts would then be separate and distinct. The separation of a farm into different enclosures, would not render the tracts thus enclosed separate, nor would it destroy the entirety of the possession. Then why should a line run by a surveyor's compass, which does not even leave a trace behind, be more potent, and work a separation of the tract or destroy his possession, when fences, lanes, or public highways on a farm, do not produce such results. We are clearly of the opinion, that such lines cannot produce such results.

If appellee was in the actual possession of a portion of this tract of 15 acres, by his tenant, no reason is perceived why it would not extend to the entire tract, unless some portion of it was actually separated from the portions thus in actual possession by intervening owners or adverse occupants. If Mrs. Burke, who had previously been a mere trespasser, was by agreement permitted to remain and occupy the house, and was to guard the entire property against trespassers, and give notice to appellee's agent if efforts were made to settle upon the tract, she thereby became the tenant of appellee, holding under him and recognizing his title; and her possession was his, and the same in effect as would have been his, had he occupied the premises as she did. And it does not matter

whether this arrangement was public or private, as all persons having, or claiming to have, an interest in this 30-acre tract, finding her in possession of a part of it, could have readily learned the extent of appellee's claim, and the relation she occupied to the premises.   Her possession seems to have been open, visible, and apparently exclusive, and of that character which usually arrests the attention of those claiming title to the land thus occupied.   Notwithstanding the tenement in which the tenant resided was humble, it constituted an occupancy, and was sufficient to constitute possession ; and, as we have seen, the streets and lines of lots in no wise destroyed the unity or identity of the property, or limited the possession.   *Williams* v *Ballance,* 23 Ill. 193.

The court below gave a number of instructions, which embraced the views here expressed, as well as other rules that cannot be controverted.   Appellant asked, and the court refused to give, this, among other instructions :

" That if the jury find, from the evidence, that Mrs. Burke resided on what is now block 8 of Ridgely's subdivision, and claimed to be there in 1856 or 1857, as tenant of the plaintiff, under the arrangement mentioned by the witness, Kerfoot, yet after Green street was actually opened as a public street, and thrown up and used as such, her possession would not extend west of said street, so as to be actual possession of the land lying west thereof, which would be notice to any adverse claimant of such land on the west."

It would be error to have given this instruction.   It asserts that, a street intervening, between the portion of the 15 acres on which the house of the tenant was situated and other portions of the tract, her possession did not extend beyond the street.   This would have been opposed to the reasons we have here expressed, and would, in effect, limit possession to the yard of the owner of a farm, or to the field in which he

lived, and prevent his possession beyond a public highway passing through his farm. And we have seen that a street is but a passway over which the public may travel, and is but a public easement, granted by the former owner, which may be controlled by municipal authority.

The 9th instruction asked by appellant was also refused by the court, and that decision is assigned for error. It is this:

" If the jury believe that there were squatters upon the 15-acre tract claimed by Ridgely in 1856, as testified to by Kerfoot, and that he completed their removal, as stated by him in his evidence, on or about May 12th, 1857, then the plaintiff has wholly failed to show himself entitled to recover the premises in question upon the ground of tax payments thereon, as vacant and unoccupied land, for the reason that the presence of the said squatters on the property as aforesaid, prevented the property from being vacant and unoccupied land for the period required by law."

There was evidence before the jury tending to prove that the taxes had been paid on this land from at least the 26th day of November, 1848, until the same date in 1855, which makes seven years, and if so, and the land was during that time vacant and unoccupied, appellee brought himself within the second section of the statute, if he subsequently entered into possession of the property. On this state of facts, it would, therefore, have been erroneous to have given this instruction, which only refers to an occupancy in 1856 and 1857. This instruction would, virtually, although not in terms, have excluded all of the evidence in reference to the payment of taxes prior to 1856, while we have seen that there was evidence properly before the jury tending to prove seven years payment of taxes while the land was vacant and unoccupied. This instruction was, therefore, properly refused.

Upon this entire record, we are unable to discover any error for which this judgment should be reversed, and it must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE LAWRENCE dissenting :

I cannot concur with the majority of the court, in holding that an actual possession of a lot upon one side of a travelled street in a city, is also a sufficient possession, within the statute of limitations, of a lot in fact vacant upon the opposite side, even though both lots are held under the same title.