ELIZA A. WRIGHT

*v.*

JAMES L. STICE.

*Opinion filed June 18, 1898.*

1. COLOR OF TITLE—*a partition decree is color of title.*  A partition decree of a proper court, purporting on its face to convey title, constitutes good color of title even though some of the tenants in common are not made parties to the suit.

2. LIMITATIONS—*color of title, possession and payment of taxes must concur.*  Color of title alone is not sufficient to establish a bar under section 6 of the Limitation act, but payment of taxes, possession and color of title must concur.

3. SAME—*possession and payment of taxes by life tenant presumed to be for his own interest.*  Possession and payment of taxes by the life tenant while in possession with his son and ward, the remainder-man, will be presumed to be by virtue of his rights as tenant for life, and not in his capacity as guardian, to create a title in his ward.

4. EJECTMENT—*an estoppel in pais is not available in ejectment.*  An estoppel *in pais* cannot be availed of in an action of ejectment to bar the defendant from asserting his legal title.

5. ESTOPPEL—*when party is not estopped to assert title after recognizing it in another.*  A party in possession of land, even though he recognizes the title in another, may afterwards set up title in himself, if he shows that his recognition was based on a misapprehension.

6. SAME—*acts must be with full knowledge to constitute estoppel in pais.*  Representations, by words or conduct, which induce another to act in a certain way cannot be regarded as constituting an estoppel *in pais*, unless made with full knowledge of the facts or there is gross negligence in failing to learn the same.

7. ADVERSE POSSESSION—*joint possession by guardian and ward presumed to be permissive.*  Where the father owns the life estate in property and his son and ward the remainder, and both are in possession, their possession is consistent with their interests, and will be presumed to be permissive and not adverse to each other.

APPEAL from the Circuit Court of Wabash county; the Hon. CARROLL C. BOGGS, Judge, presiding.

This is an action of ejectment, brought in the circuit court of Wabash county at the November term, 1893, by the appellant, Eliza A. Wright, against the appellee, James L. Stice, to recover the possession of 32.40 acres

of land in that county. The defendant below filed a plea of not guilty. A jury was waived, and the cause was tried by the court by agreement without a jury. The trial court found the defendant not guity, and, after over-ruling motions for new trial and in arrest of judgment, entered judgment in favor of the defendant and for costs against the plaintiff. The present appeal is from the judgment so entered by the circuit court.

It was admitted upon the trial, that the common source of title to the land in question was in John Brown; that John Brown died January 27, 1872, leaving, as his widow, the appellant, whose present name is Eliza A. Wright, and leaving three children, to-wit, Mertie Brown, Rolla Brown, and Mrs. James L. Stice, then the wife of the appellee, his only heirs-at-law; that he died seized in fee of the land here in question and other lands; that Mrs. James L. Stice died November 20, 1873, leaving John B. Stice, her only child and heir-at-law, and her husband, the appellee, James L. Stice.

John B. Stice was a minor, ten years old on February 5, 1882. On May 30, 1882, one Isaac F. Price was appointed guardian of said minor by the county court of said county upon petition of his father, James L. Stice. On November 3, 1882, Eliza Wright and Mertie Brown and Rolla Brown, the two latter being minors and suing by Eliza Wright, their mother and guardian, filed a bill for partition in said circuit court, asking for a partition of certain lands, including the land above described, and making defendants thereto the said John B. Stice, and his guardian, Isaac F. Price. James L. Stice was not made a defendant to the bill, nor is he mentioned in the decree of partition after-wards entered; and his interest in the premises was not fixed by the decree, nor mentioned in any of the proceedings. A summons was issued in the partition suit directed to John Stice, Luther Stice, and Isaac F. Price. It is conceded that James L. Stice and Luther Stice are the same person. This summons was served upon Luther Stice, as

well as upon the two other defendants; and the sheriff made return that he had served the same upon Luther Stice. The bill for partition set up, that John Brown died intestate, leaving his widow and children, as above named, and possessed of the lands sought to be partitioned. The bill further averred, that Mary A. Brown, being the daughter of John Brown and the Mrs. James L. Stice above named, intermarried with James L. Stice; that John B. Stice was born as the fruit of said marriage; that said Mary A. Stice died, as above stated, on November 20, 1873; and that no persons other than the complainants and defendants had any interest in said lands. A cross-bill was filed by John B. Stice by his guardian against Mertie Brown, Rolla Brown and Eliza Wright, without making James L. Stice a defendant thereto. Answers were filed to the cross-bill, and replications to such answers. Answers and replications were also filed in the original suit. Decree was entered, appointing commissioners to divide the property. The commissioners made a report, in which they set off the 32.40 acres of land above mentioned to John B. Stice in severalty, for his share of said premises, being the one-third part thereof, after assigning to the complainant, as the widow of John Brown, her dower. The proceedings show, that some or all of the lands, sought to be partitioned, had been mortgaged by John Brown in his lifetime, and were subject to mortgage at his death; that the widow, the appellant, had paid off nearly all of the amounts due upon the said mortgages. The decree in partition subrogates her to the rights of the mortgagees. The decree approves and confirms the report of the commissioners, and decrees that the said parties hold in severalty the titles to the shares set off and assigned to them respectively by the commissioners; and, by the decree, the titles were vested in them according to said assignment.

On or about November 20, 1883, the day on which the decree in partition was entered, the appellee, James L.

Stice, who had been living theretofore upon a portion of the lands partitioned called the home place, but not on the land set off and assigned to his son, John B. Stice, moved upon the 32.40 acres so set off to his son, and subsequently lived there with his son. It is conceded, that he occupied said 32.40 acres from the fall of 1883 up to the time of the commencement of this suit, and is still in possession of the same.

Isaac F. Price remained the guardian of John B. Stice until March 19, 1884, at which latter date he resigned. Thereupon James L. Stice was, on March 22, 1884, upon his own petition, appointed guardian of his son, John B. Stice, and thereafter continued to act as such guardian. While he was guardian, he made two reports to the county court of said county, one dated November 30, 1885, and the other dated January 29, 1889. He also paid the taxes upon said 32.40 acres while he was guardian. At the November term, 1892, of said circuit court James L. Stice filed his petition for dower in said 32.40 acres of land against his son, John B. Stice, but, after evidence heard, he dismissed said petition at his own costs.

Upon the trial of the ejectment suit the plaintiff below, appellant here, introduced in evidence the proceedings and decree in the partition suit, and the reports made by James L. Stice as guardian, and certain tax receipts, as well as other documentary evidence. Witnesses were also examined orally upon the trial of the cause. The plaintiff below also introduced in evidence a quit-claim deed, executed by John B. Stice, conveying to the appellant, his grandmother, all his interest in the 32.40 acres, so set apart to him in the partition suit. This deed was executed on March 24, 1893, shortly after John B. Stice became of age. Soon after his execution of this deed said John B. Stice died at appellant's house.

Upon the trial of the case, the plaintiff submitted certain propositions to the trial judge to be held as law in the decision of the case. Some of these propositions

were held to be the law, and some were refused, and the action of the court in refusing those which were refused is one of the errors assigned by the appellant.

LEEDS & RAMSEY, for appellant.

MUNDY & ORGAN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In order to recover in the trial below, the plaintiff there, who is the appellant here, relied upon title, claimed to have been acquired under section 6 of the Limitation act by possession and payment of taxes for seven successive years under claim and color of title made in good faith. The decree in the partition suit, setting off the land here involved to John B. Stice, is relied upon as claim and color of title made in good faith. The court below refused a proposition submitted by the appellant, stating that "the decree in the partition suit in evidence in this case is color of title in John B. Stice." This refusal on the part of the court was erroneous, as the proposition announced a correct principle of law. We have held, that the judgment or decree of a proper court, making partition, purports on its face to convey title, and constitutes good color of title, even though a part of the tenants in common are not made parties to the suit, in which such judgment or decree is entered. (*Hassett* v. *Ridgely*, 49 Ill. 197; *Rawson* v. *Fox*, 65 id. 200). But in view of what is hereafter said in relation to possession and payment of taxes, we do not regard the error in refusing the above proposition as sufficient to authorize a reversal of the judgment. Color of title alone is not sufficient to establish a bar under section 6 of the Limitation act, but payment of taxes, possession and color of title must concur. (*Clark* v. *Lyon*, 45 Ill. 388).

In order to establish possession and payment of taxes for seven successive years under the decree of partition

as color of title, the appellant relies upon the possession of the appellee, James L. Stice, and upon his payment of taxes, while he was guardian of his minor son, John B. Stice.    It is said, that the possession and payment of taxes by James L. Stice were not his own possession and payment of taxes, but that he was so in possession and so made payment of taxes as the guardian of the minor, and, therefore, that his acts in this regard inured to the benefit of the minor, and created a bar in the latter's behalf under section 6 of the Limitation act.    If this be so, then, inasmuch as James L. Stice had a life estate in the premises, his possession and payment of taxes as guardian, if they were his acts as guardian, only operated, in conjunction with the claim and color of title, as a bar against himself, and cut off his own interest in the land as life tenant.

That James L. Stice had a life estate is not denied, nor can it be.    His wife inherited an undivided one-third part of the lands from her father, John Brown, subject to the dower interest of her mother, the appellant.    While she owned this undivided interest, she had a child, John B. Stice, born to her and her husband, James L. Stice, and thereafter, to-wit, on November 20, 1873, she died, leaving John B. Stice her only child and heir-at-law.    It thus appears, that she died before the act of 1874, abolishing the estate of curtesy, was passed.    Hence, under the decisions of this court, James L. Stice, upon the death of his wife leaving issue, was a tenant by the curtesy consummate in the land inherited by her from her father.    His interest was more than mere dower in his wife's land; it was a life estate in the whole of it.    (*McNeer* v. *McNeer*, 142 Ill. 388; *Jackson* v. *Jackson*, 144 id. 274).

It is true, that James L. Stice was not made a party defendant to the partition proceeding.    He was a necessary party, and, if he had been made defendant, his estate as life tenant would unquestionably have been decreed to attach to the part set off in partition to John

B. Stice. (*Spencer* v. *Wiley*, 149 Ill. 56; *Manly* v. *Pettee*, 38 id. 128; *Illinois Land and Loan Co.* v. *Bonner*, 91 id. 114). But, even where there is a voluntary partition of land, if such voluntary partition is fair and impartial, a lien or encumbrance upon the undivided interest of one co-tenant will, as a general rule, be transferred to the portion of the premises set off to that co-tenant in severalty. (7 Am. & Eng. Ency. of Law, p. 67, and cases in notes). Although the present partition was not voluntary, but under a judicial proceeding, yet, as it was perfectly fair in the proportion of land set off to John B. Stice, and, as its fairness has been recognized by James L. Stice by taking possession of such portion with his son and improving it and paying taxes upon it, it cannot be said, that he is entitled to claim a life estate in the undivided interest owned by his son before the partition. But, however this may be, it seems to be conceded by both parties to this suit, that the life estate of the appellee attached to the part so set off to his son in the partition suit. It results, that here is a case, where a life estate was owned by the father, and the remainder by the son, and both were living upon the premises during the years when the Statute of Limitations is claimed to have run. It is well settled, that it is the duty of the tenant for life to pay the taxes upon the premises, in which he has a life estate. (*Warren* v. *Warren*, 148 Ill. 641; *Huston* v. *Tribbetts*, 171 id. 547; *Higgins* v. *Crosby*, 40 id. 260; *Enos* v. *Buckley*, 94 id. 458). It is also well settled, that the tenant for life is entitled to the possession of the premises during the existence of his estate therein. (*Orthwein* v. *Thomas*, 127 Ill. 554; *Rohn* v. *Harris*, 130 id. 525; *Mettler* v. *Miller*, 129 id. 630; *Borders* v. *Hodges*, 154 id. 498). The presumption, therefore, arises that, when the owner of the life estate is in possession of the property and pays the taxes thereon, his possession is held by virtue of his right thereto as tenant for life, and his payment of taxes is made in discharge of his duty to pay them, growing

out of his interest in the property as tenant for life. *Prima facie*, the possession of the property and the payment of taxes thereon by the appellee were not for the purpose of creating a title in his son in bar of his own interest as tenant for life, and did not have such effect.

It appears, however, that in his accounts as guardian, presented to the county court, the appellee charged himself with certain rents, collected from the property, and credited himself with amounts paid out for taxes and improvements. It also appears, that, from 1884 when the appellee was appointed guardian of his son down to November, 1892, when he filed a petition for dower in said lands, he was laboring under a mistake, not knowing that he had a life estate in the whole of the premises, but supposing that he only had a dower interest therein. His error in this regard was not discovered until the introduction of evidence upon the hearing of his petition for dower. It is claimed on the part of appellant, that appellee is estopped from denying full ownership of the property in John B. Stice by the statements, contained in the inventory and reports filed by him as guardian in the county court. The inventory speaks of the property here in question as a part of the estate of John B. Stice. This was literally true, because John B. Stice had a vested interest in the property as remainder-man, but there was nothing in the inventory inconsistent with the idea, that the ownership of the property by John B. Stice was subject to a life estate. So far as the reports as guardian are concerned, the appellee does not therein treat himself as the tenant of the land under his son, as landlord, but merely charges himself with certain quantities of corn and wheat and other products raised upon the land. Even if he is thereby estopped from claiming, that he is entitled to recover back the amounts, with which he charged himself for such products, no estoppel arises as against his claim to the life interest which he owned in the property. If, however, the appellee can be held to have oc-

cupied the possession, as lessee of the premises under his son, by virtue of charging himself with the products raised from the land, his act in this regard would merely suspend his right, as life tenant, during the time of his occupation as such lessee. If one, having a life estate in lands, accepts a lease of the same premises for a term of years, it will have the effect of suspending his life estate for the term. (*Heisen* v. *Heisen*, 145 Ill. 658). The reports of appellee as guardian do not, however, show that he paid taxes, as guardian, for more than four years, to-wit, the years 1883, 1884, 1886 and 1887. The receipts produced are for the taxes of the years 1884, 1886, 1887 and 1891, being only four years, and not seven years. By the terms of these receipts the collector acknowledges the receipt of money to pay the taxes for these years from James L. Stice, and not from James L. Stice, guardian. In his testimony the appellee says, that he paid the taxes for the years from 1885 to 1893 inclusive "in the same way I paid those, receipts for which are in evidence." It appears, therefore, that, so far as the face of the receipts shows, the taxes were paid by him individually, and not as guardian. So far, however, as the reports are concerned, there is nothing in them upon the subject of possession. The reports as guardian do not indicate in any way, that he was holding possession as guardian, and not in his own behalf. They cannot, therefore, be regarded as showing an estoppel upon the subject of possession. Without possession, payment of taxes under claim and color does not constitute the bar contemplated by the statute.

We are, however, of the opinion, that there was no such estoppel here, as cuts off the appellee from claiming his interest in the property as tenant for life. If any estoppel exists, it is an estoppel *in pais*, or an equitable estoppel, but an estoppel of this kind is not available in an action of ejectment. (*Wales* v. *Bogue*, 31 Ill. 464; *Blake* v. *Fash*, 44 id. 302; *Hayden* v. *McCloskey*, 161 id. 351; *Quick*

v. *Nitschelm,* 139 id. 251). Where there is an estoppel, a person is precluded from asserting a fact by previous conduct inconsistent therewith on his own part; and there is involved in such estoppel a representation, which is either false, or is made with knowledge of all the facts. (7 Am. & Eng. Ency. of Law, p. 14; *Tillotson* v. *Mitchell,* 111 Ill. 518; *Gray* v. *Agnew,* 95 id. 315; *Noble* v. *Chrisman,* 88 id. 186). A party in possession of land, even though he recognizes the title of another, may subsequently set up title in himself, if he shows that his recognition was based upon a misapprehension of his rights. (*Jackson* v. *Spear,* 7 Wend. 401). If one party makes representations, either in words or conduct, which induced the other party to proceed in a certain way, such representations cannot be regarded as constituting an estoppel *in pais,* unless the party making them had full knowledge of all the facts, or had been guilty of gross negligence in failing to learn such facts. (*Quick* v. *Nitschelm,* 139 Ill. 251; *Bringard* v. *Stellwagen,* 41 Mich. 54). Bigelow, in his work on Estoppel, (p. 617, 5th ed.) says, that it will be fatal to an estoppel, which is claimed to exist, if "the representation was made in ignorance, under mistake; sometimes even though this mistake be one of law." "The representation must be plain and certain, and ordinarily in reference to past and present facts; not matters of law or opinion." (7 Am. & Eng. Ency. of Law, p. 14). Here, it cannot be said that, if the conduct of appellee, as divulged by these reports, amounted to a representation of any kind, or an admission of any kind, such representation or admission was made by him with full knowledge of his rights; on the contrary, they were made under mistake, and under a misapprehension of what his rights were. They cannot, therefore, be allowed to operate to his disadvantage. All statutes of limitation are based on the theory of *laches.* (*Mettler* v. *Miller,* 129 Ill. 630). It is an essential element of *laches* that the party charged with it should have knowledge. (12 Am. & Eng. Ency. of Law, p. 547).

The possession, contemplated by section 6 of the Limitation act, is an open, notorious, adverse, actual, visible and exclusive possession. (*McMahill* v. *Torrence*, 163 Ill. 277; *Ball* v. *Palmer*, 81 id. 370; *Busch* v. *Huston*, 75 id. 343; *Turney* v. *Chamberlain*, 15 id. 271). It is an essential element of a possession that is adverse and hostile, that it shall be inconsistent with a possession, or right of possession, by another. (1 Am. & Eng. Ency. of Law,—2d ed.—p. 789). If a possession is merely permissive, and entirely consistent with the title of another, it can not silently bar that title. (*Mettler* v. *Miller*, *supra*). It is also well settled law that, as between those occupying parental and filial relations, the possession of one is presumed to be permissive, and not adverse to the other. (1 Am. & Eng. Ency. of Law,—2d ed.—p. 821, and cases cited). Here, a father, the guardian of his son, who owned a life estate in real property, and his son and ward who owned the remainder, are in possession together. The possession of the one is not inconsistent with that of the other. It cannot be said, that there is such a possession as can be called adverse. To prevent the running of the statute against himself, it was necessary for the appellee to take possession of the property and pay the taxes. It cannot be said, that, because he was guardian of his son while he was so in possession and so paying taxes, he was creating an ownership in his son adverse to his own interest in the land.

The action of the court below in the giving and refusal of propositions of law, except as already indicated, was in harmony with the views herein expressed. We, therefore, see no reason for reversing this judgment. Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BOGGS took no part in the decision of this case.