GEORGE T. CARPENTER *et al.* Defendants in Error, *vs.*
MARY E. FLETCHER *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1909.*

1. LIMITATIONS—*when tenant in common cannot acquire title against co-tenants under the seven year statute.* No tenant in common, while in possession for the benefit of all co-tenants, can in any way acquire a color of title which will ripen into a bar against his co-tenants under the seven year Statute of Limitations.

2. SAME—*when possession under partition decree does not bar co-tenants.* Possession of land under a partition decree, coupled with payment of taxes for seven years, does not bar the rights of the possessors' co-tenants, who, though half-brothers of the deceased land owner, were not made parties to the partition proceeding, it not being understood by the parties that they had inherited any interest from their half-brother. ·

3. SAME—*section 4 of Limitation act requires prima facie title and not merely color of title.* Under section 4 of the Limitation act, relating to cases where possession is by actual residence for seven successive years, if a deed is relied upon which is made by any officer under any order, judgment or decree, the judgment, order or decree authorizing the issuing of the deed must be produced, and if a tax deed is relied upon the judgment and precept must be offered in evidence.

4. SAME—*what title is not available as a bar under section 4.* A title based upon a decree for partition rendered in a suit to which the half-brothers of the deceased intestate were not parties cannot be relied upon, under section 4 of the Limitation act, to bar the rights of the half-brothers as to such portions of the land as have been resided upon for seven successive years by the parties to the suit in accordance with the partition made.

WRIT OF ERROR to the Circuit Court of Mason county; the Hon. HARRY HIGBEE, Judge, presiding.

This is a writ of error to review a decree of the circuit court in a partition suit in which defendants in error were complainants. The lands consist of two eighty-acre tracts adjoining each other which have been in cultivation many years, the one hundred and sixty acres forming a square; also a forty-acre tract of timber land lying some distance from the one hundred and sixty acres. Prior to August 31, 1893, said lands were owned by Edward S. and Francis J. Fletcher, brothers of the full blood, in equal shares, as tenants in common. Edward S. Fletcher was married and with his wife and two children lived on the one hundred and sixty acres. Francis J. was unmarried and resided with his parents on a farm adjoining the one hundred and sixty acres. He and his brother, Edward S., were in possession, control and management of the land. Edward S. Fletcher died intestate August 31, 1893, leaving a widow, Mary Ellen Fletcher, and two minor children, Ludicy A. and Edward S., as his only heirs-at-law, and they have continuously resided on the land since that time, and they and Francis J. Fletcher cultivated, or procured to be cultivated, said one hundred and sixty acres, received all the rents and profits therefrom, and paid the taxes on the entire two hundred acres until October, 1896, when Francis J. Fletcher died intestate, leaving no widow or children or descendants of children, but leaving the children of his deceased brother, Edward, his father and mother, John and Annabella Fletcher, and his two half-brothers, George T. and Abner N. Carpenter, who were complainants in the bill filed for partition, as his only heirs-at-law. The Carpenters were sons of Annabella Fletcher, the mother of Edward S. and Francis J. Fletcher, by a husband to whom she was married before her marriage with John Fletcher, the father of Edward and Francis.

July 20, 1897, John Fletcher and his wife, Annabella, the father and mother of Francis J. Fletcher, filed a bill for the partition of said two hundred acres of land, to which the widow and children of Edward S. Fletcher were made defendants, together with tenants in possession of a portion of the premises. Neither of the Carpenters was made a defendant to the bill. It appears to have been unknown to the parties, including the Carpenters, that they had inherited any interest in the land from their half-brother, Francis J. Fletcher. The bill for partition filed by John and Annabella Fletcher, which was introduced in evidence on the trial of this case, alleged that no one except the parties complainant and defendant thereto had any title to or interest in said premises; that by the death of Francis J. Fletcher the complainants and the children of Edward S. Fletcher, deceased, became seized in fee simple, as tenants in common, of the interest in said land owned by Francis J. Fletcher at the time of his death. A guardian *ad litem* was appointed for the children of Edward S. Fletcher, who were minors, and answered for them, and all other defendants being adults were defaulted. The cause was referred to the master, who took the testimony and reported it to the court. Upon the coming in of the master's report a decree was entered in accordance with the allegations of the bill and commissioners appointed to make partition. Afterwards the commissioners reported they had made partition of the lands between the respective parties by metes and bounds. They set off and allotted in fee to John and Annabella Fletcher the north forty of the west eighty and thirteen and one-third acres off of the west side of the north forty of the east eighty of the one hundred and sixty acres; to Edward S. Fletcher the south forty of the west eighty; to Ludicy A. the south forty of the east eighty, and to said Ludicy A. and Edward S. twenty-six and two-thirds acres off of the east side of the north forty of the east eighty, said twenty-six and two-thirds acres being subject to the dower estate of Mary E.

Fletcher, widow of Edward S. Fletcher, as allotted and set off to her by the commissioners thereon. John and Anna-bella Fletcher were assigned thirteen and one-third acres of the timber forty. Edward S. and Ludicy A. Fletcher were assigned the remainder of said forty, but six and two-thirds acres assigned them were subject to the dower estate therein assigned to their mother, Mary E. Fletcher. The report of the commissioners was approved August 10, 1897, and the parties, respectively, took possession of their respective por-tions of the land, received the rents and profits therefrom and paid the taxes thereon until the commencement of this suit.

In January, 1904, John Fletcher died, leaving his widow, Annabella Fletcher, and his grandchildren, Ludicy A. and Edward S. Fletcher, as his only heirs-at-law. In Febru-ary, 1904, said Ludicy A. and Edward S. Fletcher, by next friend, filed a bill in the circuit court for partition of the land of John Fletcher and the assignment of dower to his widow. Defendants in error, the Carpenters, were not made parties to this suit. Such proceedings were had that the lands of John Fletcher, deceased, were partitioned be-tween the parties to the suit and dower assigned therein to his widow.

On May 22, 1905, defendants in error filed their bill in the present case, alleging that they each inherited from the deceased half-brother, Francis J. Fletcher, an undivided one-tenth interest in the two hundred acres of land. Proper parties were made defendants to the bill and partition of the land was prayed in accordance with the interests of the parties as set out in the bill. On the hearing the court found and decreed that as to the twenty-six and two-thirds acres assigned to Mary E. Fletcher as dower, the fee in which was assigned to Ludicy A. and Edward S., her chil-dren, subject to her dower estate, the said Mary E. Fletcher and her children had continuously resided thereon since the decree for partition, claiming to own the same in fee simple;

that they had paid all taxes thereon since the rendition of the decree assigning said lands to them,—a period of more than seven years prior to the commencement of this suit,—and that under the limitation laws of this State Mary E. Fletcher had acquired a life estate in said premises and that Edward S. and Ludicy A. had acquired a title in fee simple therein, subject to the life estate of their mother. As to the remainder of the two hundred acres the court found and decreed that defendants in error were the owners of the undivided interest claimed in their bill to have been inherited from their half-brother, Francis J. Fletcher, and partition was decreed and commissioners appointed to make said partition. To review that decree a writ of error has been sued out of this court by the defendants in the bill.

LYMAN LACEY, JR., for plaintiffs in error.

H. S. ELLIOTT, and R. W. MILLS, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

If the decision of this case depended upon whether the partition of 1897 and the subsequent acts of the parties to that suit toward the land in controversy amounted to an ouster or disseizin of defendants in error, which is affirmed by plaintiffs in error and denied by defendants in error, the question would have to be decided in favor of the former. The rule is well settled that the mere possession by one tenant in common who receives all the rents and profits and pays the taxes assessed against the property, no matter for how long a period, cannot be set up as a bar against the co-tenants. In such case the possession of one tenant in common is, in contemplation of law, the possession of all the tenants in common. (*McMahill* v. *Torrence,* 163 Ill. 277, and cases there cited.) Such possession, however, may become adverse if the tenant in common by his acts and con-

duct disseizes his co-tenants by repudiating their title and claiming adversely to them. "To constitute a disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them." *Busch* v. *Huston,* 75 Ill. 343.

We are of opinion that under the rule thus announced the acts of plaintiffs in error proven by the evidence in this case were sufficient to amount to a disseizin of defendants in error. But in our view that question is not decisive of this case. It is not, and could not be, denied that defendants in error inherited an interest in the land in controversy from their deceased brother, Francis J. Fletcher. The decree for partition of the land, they not having been made parties to the suit, did not divest them of their interest and vest it in plaintiffs in error. But it is claimed that the decree was color of title, under which the parties went into possession and so remained for seven years, during which period they paid all the taxes assessed against the premises, and by virtue of the seven years Statute of Limitations defendants in error are barred from recovery. We have decided that a decree in partition is color of title. (*Hassett* v. *Ridgely,* 49 Ill. 197; *Rawson* v. *Fox,* 65 id. 200; *Wright* v. *Stice,* 173 id. 571.) The crucial question, therefore, for determination is, can a tenant in common, while in possession under the common title, acquire color of title adverse to his co-tenants and defeat their title under the seven years Statute of Limitations?

The rule is settled by numerous decisions that a tenant in common in possession cannot acquire color of title in himself to the whole of the premises by procuring for his own exclusive benefit an outstanding adverse title. The title so acquired inures to the benefit of all the tenants in common. (*Montague* v. *Selb,* 106 Ill. 49; *Bracken* v. *Cooper,*

80 id. 221; *Busch* v. *Huston, supra.*) The rule is otherwise if the outstanding adverse title is acquired by one tenant in common who is out of possession and who enters into possession under and by virtue of the title so acquired. In, that case the entry under the adverse title is hostile and not for the benefit of the co-tenants. In this case the possession of the plaintiffs in error of the lands in controversy prior to the partition suit was not hostile to defendants in error, but was, in law, the possession of all the parties interested. While there may be a distinction between the title claimed by plaintiffs in error by virtue of the partition suit and the acquiring of an outstanding adverse title, we believe the policy of the law to be that no tenant in common in possession for the benefit of all the co-tenants can in any manner acquire color of title that will ripen into a bar against his co-tenants under the seven years Statute of Limitations. Unquestionably such a bar may arise under the twenty year statute where the possession and claim of title are such as to comply with the requirements of that statute.

In *Sontag* v. *Bigelow,* 142 Ill. 143, Sontag acquired title of one tenant in common to certain lands and by virtue of the title so acquired entered into possession of the premises. Afterwards there was a sale in partition of the whole of the premises, at which Sontag was the purchaser. After receiving this deed he appears to have remained in the possession of the premises and to have paid the taxes thereon for more than seven successive years, when the other tenants in common brought an ejectment suit against him. On the trial he offered in evidence the master's deed made under the partition sale. This deed was not relied on as title but was claimed to be color of title. This was, apparently, because of some defect in the partition suit which is not pointed out in the opinion. The court held that while the evidence established color of title and seven years' possession and payment of taxes, such title could not prevail against the co-tenants because the possession was not adverse, and also

because, having entered into possession of the premises as a tenant in common, he could not afterwards acquire color of title and invoke the aid of the seven years Statute of Limitations against his co-tenants. The court said (p. 153) : "He therefore acquired possession of the premises as a tenant in common with the plaintiffs, and, occupying that position, he could not acquire color of title in 1874 and rely upon such title to defeat the plaintiffs."

While that is the only case to which we have been referred in which it has been squarely held that a co-tenant in possession cannot acquire and rely upon color of title as against his co-tenants, yet it seems, upon reason, that the conclusion there reached must be correct. If the co-tenant in possession cannot acquire and assert against his co-tenants an adverse, outstanding title superior to the title of all the co-tenants, and by which the title pursuant to which the co-tenancy exists would be entirely defeated, as was held in *Montague* v. *Selb, supra,* it follows that he may not rely upon color as against the other tenants in common. To decide otherwise would be to say that he may not assert the substance,—the true title,—but may so use the shadow,—the color of title. Neither *Hassett* v. *Ridgely, supra,* nor *Baldwin* v. *Ratcliff*, 125 Ill. 376, was within this rule, because in neither of those cases had the alleged co-tenant or co-tenants who relied upon color ever been in possession under the common title holding for the benefit of all.

Defendants in error have assigned cross-errors upon that portion of the decree holding they are barred from asserting their claim and interest in the twenty-six and. two-thirds acres assigned to the widow as dower, with remainder to her children in fee. The widow and children have resided continuously upon this twenty-six and two-thirds acres since the partition, and the chancellor appears to have held that defendants in error were barred from a recovery of their interest in said tract under section 4 of the Limitation act. This section is as follows: "Action brought

for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual residence thereon for seven successive years, having a connected title in law or equity, deducible of record, from this State or the United States, or from any public officer or other person authorized by the laws of this State to sell such land for the non-payment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution, or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken, as aforesaid; but when the possessor shall acquire such title after taking such possession, the limitation shall begin to run from the time of acquiring title."

The title relied upon by the widow and children is not "deducible of record from this State or the United States." It is based upon the decree for partition. Under said section we have held that mere color of title is not sufficient but that a *prima facie* title is required. If a deed is relied on under section 4, made by any officer mentioned in said section under any order, judgment or decree of a court of record, the judgment, order or decree authorizing the issuing of the deed must be produced. If title is claimed by virtue of a tax deed the judgment and precept must be offered in evidence. The rule is different under claim of title under sections 6 and 7. There only color of title is required, and a deed by an officer authorized to make a deed will constitute color of title without introducing the judgment, order or decree in pursuance of which it was made. (*Elston* v. *Kennicott,* 46 Ill. 187.) In *Burton* v. *Perry,* 146 Ill. 71, the court said (p. 124): "Any deed which purports on its face to convey title may be used as color of title under section 6 of the Limitation act, which provides for possession and payment of taxes for seven years, and under section 7 of the same act, which provides for payment of taxes for seven years while the land is vacant and unoccupied. A tax deed may be good color of title under those

sections even though the judgment and precept upon which it is based are absolutely void. But it requires something more than mere color of title to constitute the bar contemplated by section 4. The latter section requires a *prima facie* title. For instance, it was held before the adoption of section 224 of the present Revenue act, that a tax deed without the judgment and precept upon which it is based is not a *prima facie* title such as is required by the act of 1835, of which said section 4 was a part. (*Elston* v. *Kennicott*, 46 Ill. 187.) By the terms of section 4 the officer must be *'authorized'* to sell the land for the non-payment of taxes. Unless the judgment and precept are produced no authority to sell is shown. It cannot be said that the language of the section refers to *any* deed which a public officer may make without pretense of authority. (*Elston* v. *Kennicott, supra.*) On the contrary, the deed is one which is made in pursuance of the authority required by law." In *Lightcap* v. *Bradley,* 186 Ill. 510, the court said (p. 530) : "Under that section [section 4] something more than mere color of title is required. The title must be such as is *prima facie* good, and such as courts will enforce unless rebutted or destroyed by evidence of a better title."

The title of the widow and children of Edward S. Fletcher is based on the decree for partition rendered in a suit in which defendants in error were not parties and by which they were not bound. It did not, therefore, constitute *prima facie* title against them and could not be availed of under section 4 as a bar.

The decree of the circuit court is reversed and the cause remanded to that court, with directions to enter a decree for partition in accordance with the prayer of the bill. The costs of this court will be adjudged against the plaintiffs in error.      *Reversed and remanded, with directions.*