JAMES HINDS, Defendant in Error, vs. LENA SURBECK
et al. Plaintiffs in Error.

*Opinion filed December 17, 1913.*

1. LIMITATIONS—*when tenant in common cannot acquire color
of title as against co-tenants.* A tenant in common in possession
for the benefit of all the co-tenants cannot acquire color of title
which will ripen into a bar as against his co-tenants under the
seven year Statute of Limitations.

2. SAME—*when tenant in common cannot rely upon partition
decree as color of title.* One who enters into possession of a por-
tion of a tract of land as the purchaser of the interests of several
of the tenants in common, and thereafter files a bill for partition
against other tenants in common and obtains a decree awarding
him the portion of the tract in his possession, cannot rely upon
such partition decree as color of title as against a tenant in com-
mon who was not a party to the suit. (*Carpenter* v. *Fletcher,* 239
Ill. 440, followed; *Peters* v. *Dicus,* 254 id. 379, explained.)

3. LACHES—*when delay of sixteen years is not laches.* Where
the owner of a tract of land set off to him in a partition proceed-
ing conveys the same but does not convey his interest in a tract
set off in the same proceeding to the widow for homestead and
dower, the mere fact that he asserts no claim to such interest for
a period of sixteen years, although he knew that his grantee was
in possession of a portion of the homestead and dower tract claim-
ing to own the same, does not amount to *laches,* there being no
expenditure of money by the party in possession for improvements
and taxes which would exceed the amount of rents received and
no other element making it inequitable to assert title.

4. EVIDENCE—*when allowing complainant in partition to tes-
tify, though incompetent, will not reverse.* Permitting the com-
plainant in a partition proceeding to testify although he was not
a competent witness because the defendants were defending as
heirs is not ground for reversal, where the record shows his title
without the aid of his testimony.

WRIT OF ERROR to the Circuit Court of Edgar county;
the Hon. M. W. THOMPSON, Judge, presiding.

H. S. TANNER, for plaintiffs in error.

THOMAS W. QUINLAN, and VICTOR V. RARDIN, for de-
fendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed to the June term, 1912, of the circuit court of Edgar county by defendant in error to partition 50 acres of land in that county. After the issues were settled a hearing was had before the chancellor and a decree entered finding defendant in error the owner of an undivided one-seventh of the real estate, and certain of the plaintiffs in error (heirs of Matthew Merkle) owners of an undivided four-sevenths and Louisa Pitcher of two-sevenths. Plaintiffs in error, who claimed the undivided interest which the court found in defendant in error, have sued out this writ of error.

In 1875 Absalom Pitcher died intestate, seized of about 160 acres of land in said county, located in the form of a square. He left a widow and seven children as his only heirs-at-law. In January, 1880, under a decree of foreclosure, the master in chancery conveyed to defendant in error all interest of James W. Pitcher (one of the sons of said Absalom Pitcher) in the 160-acre tract left by the father. Some weeks thereafter, in 1880, defendant in error filed a bill for the partition of said tract, making the widow and heirs of said Absalom Pitcher parties. Commissioners were appointed, who partitioned the land among the co-tenants and caused a plat to be made dividing the land into lots, assigned the dower and homestead and designated which lot should go to each of the heirs in severalty. Lot 1 was a strip across the south end of the 160-acre tract, of even width and containing 50 acres, and was set aside as the dower and homestead of Louisa Pitcher for her lifetime, no order being made as to the ownership of the remainder after her death. To the north of lot 1 were five narrower lots running across the tract, and then came three square lots of about even area, dividing between them about 48 acres across the north end of the 160 acres. One of these lots (No. 8) was assigned to defendant in error, Hinds, as his

interest in all the land except that part set off to the widow.
In 1882 said Hinds sold this lot 8 to Matthew Merkle. Several witnesses testified that Merkle stated to them that Hinds
had also sold to him his (Hinds') interest in the tract set
off to the widow. Louisa Pitcher, the widow, resided on
the land set off to her until her death, in April, 1896. Upon
her death Merkle at once entered into possession of the east
33.93 acres of said lot and possibly a few acres more. He
had bought the undivided interests of several of Absalom
Pitcher's heirs in said lot and apparently understood that he
had bought Hinds' interest therein, and this taking possession was in the nature of a verbal partition agreement between himself and the heirs whose interests he did not claim.
Lucretia Pitcher, who owned as an heir of her father, Absalom Pitcher, one-seventh of said lot 1, took possession, at
her mother's death, of the remainder. In 1898 Merkle, Lucretia Pitcher and others filed a bill for partition of the
50-acre tract, which was now free of the widow's life interest, naming as the defendants those who by heirship from
Absalom Pitcher would still have interests, but not including
as a defendant the defendant in error, Hinds. Commissioners were appointed and partitioned the 50-acre tract among
those found to be the owners. They gave Matthew Merkle
the east 33.93 acres, the heirs of W. D. Pitcher 8.92 acres
and Lucretia Pitcher 7.15 acres. During these partition
proceedings Lucretia Pitcher purchased the interest of her
brother, W. D. Pitcher, at administrator's sale, and a decree
was entered accordingly in June, 1899, setting aside to her
not only the 7.15-acre tract but the 8.92-acre tract as well,
and setting aside to Merkle the east 33.93 acres.

The evidence is undisputed that from the time Merkle
took possession he remained continuously in possession of
said 33.93-acre tract of land until his death, in 1910; that
he farmed it himself for a number of years and afterwards
rented portions of it to tenants; that he repaired the fences
and hedge, and that about 1890 he put in tile drains across

the land, and also signed a petition for a drainage district and voted at drainage district meetings as the owner; that he also signed an oil lease concerning the land. It is admitted that he paid the taxes on said tract for the years 1901 to 1911, inclusive. Plaintiffs in error are the heirs-at-law of Merkle and several of the heirs-at-law of Absalom Pitcher. No question appears to be raised that the Merkle heirs have continued the same character of possession as that held and exercised by Matthew Merkle. After the latter's death his wife lived on the land for a year, and at her death Matthew Merkle's heirs sold their interest in the land at public sale. The purchaser demanded an abstract, and on preparing this it was discovered that the deed of the defendant in error to Matthew Merkle did not include his interest in the 50-acre dower tract. To correct this omission, as requested by the purchaser, R. K. Shelledy, an abstracter, acting for plaintiffs in error, asked defendant in error to quit-claim his interest in said lot 1 to plaintiffs in error. Shelledy testified that the defendant in error sat down by the deed and took up the pen as if to sign it, hesitated a moment, and then said he would wait and think it over. Plaintiffs in error did not authorize the payment of any money to defendant in error to sign said quit-claim deed. Neither the abstracter nor the heirs admitted that Hinds had any interest in the land. Shortly thereafter this suit was brought.

Defendant in error testified that by reason of sickness and death in his family his ownership of the undivided interest, in remainder, of the dower land had escaped his mind. He further testified that since 1880 he lived about six miles from the property continuously, with the exception of about nine months in 1885, which he spent in Kansas. The evidence shows clearly that defendant in error knew that Matthew Merkle claimed the ownership of this land from the time he took possession, in 1896, until his death, in 1910, and that the heirs claimed ownership afterward up to the time this bill was filed, in 1912.

Plaintiffs in error claim that they were the owners of the land in controversy because the decree in the partition suit brought by their father, Matthew Merkle, and others, which vested the title to this land in him, constituted color of title although defendant in error was not made a party to that suit, and that plaintiffs in error and their father have been in possession under claim and color of title made in good faith, with seven successive years' payment of taxes. Can a tenant in common in possession for the benefit of all co-tenants acquire color of title which will ripen into a bar against his co-tenants under the seven-year Statute of Limitations? This court, in *Carpenter* v. *Fletcher,* 239 Ill. 440, in a case very similar to this in its facts and identical on the legal questions involved, reviewed the authorities, and held that a tenant in common, while in possession under a common title for the benefit of co-tenants, could not acquire color of title against his co-tenants and defeat their title under the seven-year Statute of Limitations. In that case, as in this, color of title was claimed under a partition decree. There, as here, the acts of the plaintiffs in error proven by the evidence were sufficient to amount to a disseizin of the defendant in error.

The case of *Peters* v. *Dicus,* 254 Ill. 379, relied on by plaintiffs in error, does not conflict with the holding in *Carpenter* v. *Fletcher, supra.* In *Peters* v. *Dicus* it was stated (p. 381): "A partition was made assigning to the appellee Peters the ten lots involved in this application, and on January 3, 1903, the commissioners' report of such partition was approved and the title to such ten lots was decreed to be vested in Peters. He took possession of them in March, 1903, fenced them, erected on them a dwelling house costing $6000, has ever since continued in possession of and resided upon them and paid all taxes assessed against them." That is, in that case Peters, who claimed under the partition decree, did not take possession of the part allotted to him until after the decree of partition was entered. While no

reference is made in that case to the case of *Carpenter* v. *Fletcher*, it is clear that it was not intended to overrule the latter case. The rule laid down in *Carpenter* v. *Fletcher*, *supra*, was approved in *Craig* v. *Cox*, 255 Ill. 564. That rule must control here.

Plaintiffs in error further contend that defendant in error is barred by his own *laches* in neglecting for practically sixteen years to assert his alleged right in the land, during all which time they and their ancestors were in open, notorious and hostile possession of the land. Delay for less than the statutory period of limitation in asserting rights to land will not bar the owner's rights unless the delay is accompanied by some other element to render it inequitable to permit such assertion of title. (*Compton* v. *Johnson*, 240 Ill. 621.) As a general rule, where a statute has fixed the period of limitation under which a claim is barred in a court of law, courts of equity will by analogy adopt the limitation thus fixed. All statutes of limitation are based on the theory of *laches*. (*Mettler* v. *Miller*, 129 Ill. 630; *Peabody* v. *Burri*, 255 id. 592.) Neither plaintiffs in error nor their ancestor have expended money in improvements and taxes in excess of the rents received on the land here in question. Nothing is shown to indicate that any prejudice has resulted to plaintiffs in error by reason of the non-action of defendant in error.

Plaintiffs in error further state that the undisputed evidence shows that Matthew Merkle, both by his acts and declarations, believed he owned defendant in error's interest, and that defendant in error's silence for some sixteen years justified that belief, and they contend that this ought to preclude defendant in error from asserting his interest in the land in question. That argument, if it has any force, would have to be upheld on the ground of *laches*. It cannot be sustained, as already stated, on that ground.

Defendant in error gave testimony in this case. His testimony was incompetent against plaintiffs in error, as they

were defending as the heirs of Matthew Merkle, deceased. (Hurd's Stat. 1911, chap. 51, sec. 2, p. 1156.) Defendant in error's case, however, was proven without his own evidence. The record showed his title.

The decree of the circuit court must be affirmed.

*Decree affirmed.*